COMMONWEALTH vs. GERALD AMIRAULT.

Middlesex. January 8, 1987 — April 13, 1987.

Present: HENNESSEY, C.J., WILKINS, LIACOS, ABRAMS, & NOLAN, JJ.

*Practice, Criminal,* New trial, Voir dire, Challenge to jurors, Jury and jurors. *Jury and Jurors. Evidence,* Bias of juror. *Constitutional Law,* Jury.

In a case where a criminal defendant moved for a new trial on the ground that his right to a fair and impartial jury, guaranteed him by the Sixth and Fourteenth Amendments to the Constitution of the United States, was impaired by misconduct of a juror, due process was satisfied by a hearing before the trial judge, in which the defendant had the opportunity to show by a preponderance of the evidence that the juror was actually biased because the juror knowingly made a false answer to a material question at pretrial voir dire and that prejudice resulted from such dishonesty. [624-626]

In denying a motion for a new trial based on an allegation of juror misconduct, in a case where the defendant was convicted on numerous indictments for rape and sexual abuse of children, the trial judge, after a hearing in which he found, on sufficient evidence, that the juror had honestly answered questions at pretrial voir dire, that the juror's nondisclosure of having been a victim of a sexual offense was unintentional, and that the juror during the course of the trial had demonstrated conscientiousness, properly concluded that the juror was not actually biased with respect to the defendant and was impartial. [626-627]

The scope of the hearing on a postverdict allegation of juror misconduct, on which a criminal defendant based a motion for new trial, was a matter within the trial judge's discretion, and no abuse of discretion appeared where the judge, once convinced of the essential truth of the juror's testimony, after defense counsel was given extensive opportunity to explore the juror's motives for fabrication, excluded further testimony and terminated the hearing. [627-628]

On appeal from the denial of a criminal defendant's motion for a new trial, after a hearing in which the trial judge was warranted in finding that a juror did not purposefully give an incorrect answer or intentionally withhold information by not correctly answering a pretrial voir dire question concerning whether the juror had ever been the victim of a crime similar to the offense with which the defendant was charged, this court concluded that, in the circumstances, implied bias could not be attributed

to the juror as matter of law, nor was it "more probable that not" that the juror was biased against the defendant, and consequently the defendant's motion for a new trial was correctly denied. [628-630]

A criminal defendant was not entitled to a new trial on the basis of his claim that a juror's incorrect answer to a question on voir dire had deprived him of an opportunity to exercise a peremptory challenge of this juror, where the judge, in ruling on the defendant's constitutionally-based claim that the juror's answer had the effect of depriving him of an impartial jury, had found, on sufficient evidence, that the juror was not actually or impliedly biased. [630-631]

INDICTMENTS found and returned in the Superior Court Department on January 21, 1985, and September 19, 1985.

The cases were tried before *Elizabeth J. Dolan,* J., and a motion for a new trial was heard by her.

After a single justice of the Appeals Court authorized the defendant to bifurcate his appeal, the Supreme Judicial Court granted a request for direct appellate review of the denial of his motion for a new trial.

*Juliane Balliro* for the defendant.

*Karen J. Kepler,* Assistant District Attorney, for the Commonwealth.

NOLAN, J. Gerald Amirault appeals from the denial of his motion for a new trial on numerous indictments charging rape and sexual abuse of children. He argues that his right to a fair trial was violated by the misconduct of a juror and that he is entitled to a new trial.[1] The claimed misconduct concerns the failure of a juror to answer correctly a question posed during the jury empanelment process. This information did not surface until after the jury had returned their verdicts. The trial judge conducted a hearing to determine whether Amirault had been harmed by the nondisclosure. The judge concluded that the juror was not biased and that the circumstances did not warrant a finding of implied bias. The motion for a new trial was therefore denied. We granted the Commonwealth's application for direct appellate review. We agree with the judge's ruling and affirm the denial.

---

[1] Amirault has also appealed errors which, he alleges, marred his trial. A single justice of the Appeals Court permitted Amirault to bifurcate his appeal. We are concerned here only with the denial of the motion for a new trial predicated on juror misconduct.

The defendant was involved in the operations of the Fells Acres Day School in Malden. In January and September, 1985, a Middlesex County grand jury returned the indictments which charged Amirault with rape and indecent assault and battery. Nine different children, both male and female, were named as victims. On July 19, 1986, after a three-month trial, the jury found Amirault guilty on all indictments. The jury deliberations lasted twelve days.

On Monday, July 21, 1986, a telephone call was received in the offices of Amirault's attorneys. The caller identified himself as a Mr. Galligan and asked to speak with one of the attorneys involved in the Fells Acres case. Galligan related that on the previous day, he had read a newspaper account of the trial. The story was accompanied by a photograph of the jurors standing outside the court house. Galligan thought that one of the jurors looked familiar to him. The jurors' names were provided in the story and he was sure that he knew one of the jurors. Galligan informed the attorney that what he knew about the juror caused him to question whether Amirault received a "fair shake." He believed that, while a teenager, the juror had accused Galligan's cousin of rape. Furthermore, the case had gone to court and his cousin had been sentenced to a prison term. The attorney asked Galligan for more details, but Galligan stated he was reluctant to become further involved and that the attorney should be able to verify his information. Galligan refused to say anymore about himself. He concluded the conversation by remarking that he might call back, but there is no indication that he ever did.

Amirault's attorney then petitioned the judge to direct the Commonwealth to provide the defense with access to criminal records in order to verify Galligan's story. The judge entered such an order on August 1, 1986. The inquiry revealed that the juror's name was indeed correctly provided by Galligan along with certain other personal matters. On the basis of that corroborating information, defense counsel extended the scope of the investigation. A private investigator was retained. He interviewed two individuals who were somewhat familiar with the juror's past. One person confirmed that the juror had been

raped and that a man had gone to prison for a lengthy period of time but could not recall the year of the incident or the rapist's name. The other individual's knowledge was more vague, but that individual had been told that the juror was raped, and that a man had gone to prison for the crime.

On August 12, 1986, the judge ordered the juror to appear at an in camera hearing. The order informed the juror that the juror was entitled to have counsel present and that the juror's attorney could view beforehand the documents relating to Amirault's motion for a new trial. The hearing took place on August 19 and Amirault was present. Defense counsel initially sought to question the juror by claiming that the juror was Amirault's witness. The judge responded that as she had summoned the juror, she would initiate the interrogation and then permit both the defendant and the Commonwealth to pose questions.

A review of the empanelment process is necessary at this point before turning to the evidence produced at the hearing. During the empanelment, the judge and trial counsel utilized written questionnaires along with oral examination. Three written documents were completed by the jurors who reached the final oral examination. All individuals who were summoned to jury service filled out a standard, one-page form. A special, three-page document with questions especially pertinent to the present case was also given to all potential jurors. A list of over 375 potential witnesses was appended to this questionnaire. The answer to these questions were examined by the judge and trial counsel over eight days. Based upon the responses, a "pool" of forty-eight potential jurors were found to be indifferent. These jurors filled out another specifically drafted form. Those who were not eliminated by their written answers underwent voir dire inquiry by the judge.

The juror underwent the process described. On the standard form, there is a question in which a respondent is asked, "[D]escribe briefly any involvement (past or present) as a party or victim in a civil or criminal case: you or any member of your family." The juror answered, "No." The specially drafted document contained the following question: "Have you or any member of your immediate family or any of your close friends

ever been a victim, witness, or defendant in a criminal case?" The juror responded affirmatively but answered "No," to a follow-up question concerning whether the matter ever went to trial. The juror was questioned about the nature of this answer on voir dire and informed the judge that a member of the juror's immediate family had been charged with driving under the influence. The judge asked whether that incident would have any effect on the juror's ability to be impartial. After giving satisfactory answers, the juror was found to be indifferent and neither side objected.

Thus, the postverdict hearing was conducted to determine whether the juror had correctly answered the question about being a criminal victim and what harm, if any, had been suffered by Amirault if Galligan's story was true.

We set forth relevant portions of the colloquy between the juror and the judge:

*Q:* "So the first question that would be posed by the Court to the juror would be: Did the event, as alleged, occur? And the event, as alleged, would be whether or not you were ever the victim of a crime at some point in your life — alleged?"

*A:* "To my knowledge, I can never remember being a victim of a crime. If something happened in my life, it had to be over 40 years ago, and it has something — been completely blocked from my mind; I know no details about it whatsoever. I cannot recall anything about it. I had to have been a child, and I just cannot remember anything about it."

*Q:* "And when you responded to the question on the first questionnaire, the answer was 'No.' Was that based upon the fact that you could not remember anything —"

*A:* "I cannot remember — the only thing that came to my mind was my children being in trouble, and that's the only thing that's important to me."

*Q:* "And as the trial went on, there was no impact as far as the prior incident? Nothing ever came to mind in your —"

*A:* "I can't remember anything, so nothing come into my mind."

*Q:* "All right. And when you went into the juror service on this panel and you answered that you could decide it solely upon the evidence —"

*A:* "Definitely."

*Q:* "—were you ready then to follow the instructions of the Court?"

*A:* "Definitely."

*Q:* "Is it reasonable, then, to assume that if you have no memory, or had no memory of it at that time, that you made no mention of anything to any of your fellow jurors at any time about yourself?"

*A:* "I have nothing to remember."

Defense counsel then cross-examined the juror about the incident. Relevant excerpts from the record are included below.

*Q:* "[Y]ou had indicated that you remember something happening to you as a child, but you don't remember any details or particulars about what this was?"

*A:* "Exactly right."

*Q:* "Does it refresh your memory at all if I ask you whether or not it was in the nature of a sexual assault of any type?"

*A:* "No."

*Q:* "Does it refresh your memory at all if I ask you if it was in the nature of a rape incident?"

*A:* "No."

*Q:* "Okay. Do you have any memory of ever having told anybody that something in the nature of a sexual assault occurred when you were a child?"

*A:* "No."

*Q:* "Do you remember telling anybody that somebody went to jail for a long time as a result of an incident involving you as a child?"

*A:* "I never remember anybody going to jail."

Defense counsel continued to interrogate the juror about what the juror remembered. The final question asked was whether the juror understood the possible penalties that could be imposed for a dishonest or incomplete voir dire answer. Both the Commonwealth and the juror's attorney objected and the judge did not permit the juror to answer. Since defense counsel had no further questions, the juror was excused. Counsel then argued to the judge why the question was proper. Additionally, counsel requested that the hearing be extended so that the defense could present additional witnesses who

might impeach the juror's credibility. Specifically, counsel wanted to call the two individuals interviewed by the private investigator and to present expert testimony pertaining to the ability of a rape victim to suppress the memory of such an experience and remain impartial in circumstances similar to this case. After the Commonwealth responded to the arguments of defense counsel, the hearing recessed.

When the hearing resumed, defense counsel made an offer of proof concerning a conversation that had occurred between a court clerk and the juror's attorney. During the recess, defense counsel learned from the clerk that the clerk had spoken with the juror's attorney when the attorney called to make arrangements to see the papers prior to the hearing. The attorney mentioned to the clerk that the juror had been involved in a sexual incident as a youngster but was unable to recall any details of the incident. Defense counsel sought to have the clerk testify about this conversation because he claimed that it contradicted the juror's testimony. The judge asked the clerk if counsel had correctly summarized what the juror's attorney had told him. The clerk stated that he could add nothing further and the judge ruled his testimony unnecessary because the record contained the offer of proof. The judge also denied the requests to extend the investigation and the hearing.

In the decision denying Amirault's motion for a new trial, the judge found that the juror had honestly answered the pretrial questions and that the nondisclosure of having been a victim of a sexual offense was unintentional. The judge stressed that this conclusion was supported by an incident that occurred after the trial began. The juror informed the judge, in chambers and on the record in the presence of all counsel, that the juror had stopped at the juror's place of employment to retrieve some personal belongings. The juror met a fellow worker who sought to engage the juror in conversation about the case. Specifically, the fellow worker asked whether the juror knew a certain person whose daughter attended the Fells Acres center. The juror admonished the coworker that the juror was not able to discuss anything connected to the case and the conversation went no further. The juror checked the witness list to make sure that the individual mentioned was not scheduled to testify

at trial and did not discover that name listed. The list was reviewed again in chambers. The juror was returned to the jury without objection from either side. The judge noted that had the juror harbored any hostility toward Amirault, it is not likely that the juror would have reported the incident. Therefore, the judge concluded that the juror was not actually biased toward Amirault and there was no basis to support a finding of implied bias.

The Sixth Amendment to the United States Constitution guarantees a criminal defendant the right to be tried by an impartial jury. This right is made applicable to the States by the Fourteenth Amendment to the United States Constitution. See *Duncan* v. *Louisiana,* 391 U.S. 145, 149 (1968).[2] An impartial jury are the cornerstone of a fair trial; "[t]he failure to grant a defendant a fair hearing before an impartial jury violates even minimal standards of due process." *Commonwealth* v. *Susi,* 394 Mass. 784, 786 (1985). But defendants must also recognize that they are not entitled to perfection in the trial process. *Brown* v. *United States,* 411 U.S. 223, 231-232 (1973), and cases cited.

The defendant would have us rule that the juror was actually prejudiced. We believe, however, that he has not successfully made such a demonstration. Our analysis is guided by the Supreme Court decisions in *Smith* v. *Phillips,* 455 U.S. 209 (1982), and *McDonough Power Equip., Inc.* v. *Greenwood,* 464 U.S. 548 (1984).[3] In *Phillips,* the Supreme Court refused to impute bias to a juror who, during the trial, submitted an employment application to the prosecutor's office. The Court observed: "Due process means a jury capable and willing to decide the case solely on the evidence before it, and a trial judge

[2] Article 12 of the Massachusetts Declaration of Rights also guarantees the right to an impartial jury. *Commonwealth* v. *Wood,* 389 Mass. 552, 559 (1983). The defendant has not argued that art. 12 establishes a higher standard and thus we examine his claim solely under the due process clause. The analysis is the same as it would be under the Sixth Amendment. *Willie* v. *Maggio,* 737 F.2d 1372, 1379 n.6 (5th Cir. 1984).

[3] Although *McDonough* is a civil case, its reasoning has force in criminal cases. See, e.g., *United States* v. *Perkins,* 748 F.2d 1519, 1531-1533 (11th Cir. 1984).

ever watchful to prevent prejudicial occurrences and to determine the effect of such occurrences when they happen." 455 U.S. at 217. Consequently, the Court "held that the remedy for allegations of juror partiality is a hearing in which the defendant has the opportunity to prove actual bias." *Id.* at 215.

*McDonough* was a products liability suit in which the jury returned a verdict for the defendant. After the trial, the plaintiff moved for a new trial because a juror failed to admit during voir dire that his son had been seriously injured in the explosion of a truck tire. The District Court judge denied the motion without even examining the juror. 464 U.S. at 551. The Court of Appeals reversed because it concluded that even had the juror acted in good faith, the honest failure to respond affirmatively to a voir dire question was "irrelevant." *Id.* at 552. A new trial was required because the "information would have been significant and cogent evidence of the juror's probable bias." *Id.* The Supreme Court held that the Court of Appeals was wrong in ordering a new trial outright. The plurality opinion said that "to obtain a new trial in such a situation, a party must first demonstrate that a juror failed to answer honestly a material question on *voir dire,* and then further show that a correct response would have provided a valid basis for a challenge for cause. *The motives for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial*" (emphasis supplied). *Id.* at 556.

Our reading of *Phillips* and *McDonough* compels the conclusion that when a defendant raises a reasonable claim of juror misconduct subsequent to the verdict, the due process requirement is satisfied by a hearing conducted by the trial judge in which the defendant has the opportunity to show that a juror was actually biased because the juror dishonestly answered a material question on voir dire and that prejudice resulted from the dishonesty. In the instant case, Amirault requested and received such a hearing. Only the juror testified and defense counsel was permitted to cross-examine the juror extensively. Amirault argues, however, and the record supports him, that the juror did not correctly answer the voir dire question con-

cerning whether the juror had ever been the victim of a similar crime. But, as *McDonough* makes clear, the crucial inquiry is whether the juror's answer was honest; that is, whether the juror was aware that the answer was false. *United States* v. *Perkins,* 748 F.22 1519, 1531 (11th Cir. 1984). See also *Commonwealth* v. *Harrison,* 368 Mass. 366, 376 (1975) (falsehood must be "material and knowing").

The determination of this issue is a question of fact and rests with the trial judge. The defendant has the burden of showing that the juror was not impartial and must do so by a preponderance of the evidence. In the absence of clear abuse of discretion or a showing that the judge's findings were clearly erroneous, the judge's ruling will not be disturbed on appeal. *Commonwealth* v. *Tavares,* 385 Mass. 140, 156, cert. denied, 457 U.S. 1137 (1982). "[A] finding of fact by the trial judge will not be deemed 'clearly erroneous' unless the reviewing court on the entire evidence is left with the firm conviction that a mistake has been committed." *Id.,* quoting *New England Canteen Serv., Inc.* v. *Ashley,* 372 Mass. 671, 675 (1977).

The trial judge found that the juror's misstatements were honest mistakes because the judge believed the juror's testimony that the juror had forgotten about the incident. The juror testified that the juror did not intend to conceal the information and did not know that defense counsel was misled. During the trial, the juror had demonstrated conscientiousness by informing the judge that the juror might have been improperly approached. A juror's testimony is not "inherently suspect," *Phillips, supra* at 217 n.7, and a judge may rely on it in determining the existence of bias. *Commonwealth* v. *Dalton,* 385 Mass. 190, 194-195 (1982).

The hearing was meaningful and consistent with the purposes outlined in *Phillips, supra* at 222 (O'Connor, J., concurring): "A hearing permits counsel to probe the juror's memory, his reasons for acting as he did, and [his] understanding of the consequences of [his] actions. A hearing also permits the trial judge to observe the juror's demeanor under cross-examination and to evaluate [his] answers in light of the particular cir-

cumstances of the case."[4] Amirault has produced no other evidence that the juror was actually prejudiced against him and our review of the hearing persuades us that the judge could have accepted the truth of the juror's experience. In the circumstances, we conclude that the judge's determination that the juror was impartial was not clearly erroneous and therefore we will not set it aside.

Amirault contends, however, that even if we do not disturb the judge's finding that the juror was not actually biased, the judge's decision must be reversed because defense counsel was denied sufficient opportunity to prove actual bias. Amirault claims it was error for the judge (1) to refuse to allow the juror to answer the question concerning knowledge of criminal penalties for a false voir dire answer; (2) to refuse to allow counsel to continue their investigation of the incident; (3) to refuse to extend the hearing to include expert and other lay witness testimony; (4) to refuse to allow the clerk to testify about his conversation with the juror's attorney.

The scope of a hearing on a motion for a new trial involving an allegation of juror misconduct is entrusted to the sound discretion of the trial judge. See *Commonwealth v. Fidler,* 377 Mass. 192, 202-203 (1979). In the absence of reasonable grounds to believe that the juror was biased, a hearing is not designed to afford a convicted defendant the opportunity to conduct a miniature trial with the juror as the accused. Since the judge was warranted in being convinced of the juror's honesty, there was no rational basis for further inquiry. The focus of the hearing was not whether the rape had actually

---

[4] "In Massachusetts, juror testimony is admissible at a hearing to impeach a jury verdict, but only to establish the existence of improper extraneous influences on the jury. This testimony is not admissible to demonstrate the effect that the extraneous matter had upon the juror's thought process." *Commonwealth* v. *Dunnington,* 390 Mass. 472, 478 (1983). But "a juror's bias, strictly speaking, is not an 'extraneous matter' as that term is ordinarily used." *Commonwealth* v. *Grant,* 391 Mass. 645, 653 (1984).

The Commonwealth has not argued that the evidence that a juror was the victim of a crime relates to the juror's mental processes and was inadmissible. Therefore, we assume the judge acted properly in examination of the juror. See *Commonwealth* v. *Tavares,* 385 Mass. 140, 156 (1982).

occurred, but whether the juror was biased against the defendant. The defendant wanted to offer psychiatric evidence of psychological blockage, but we decline to require consideration of such evidence. Once the judge accepted the essential truth of the juror's testimony, the need for other witnesses to testify evaporated. Likewise, the judge was warranted in finding that the conversation between the clerk and the juror's attorney did not possess any sufficient impeachment value. Finally, we do not see how the judge's refusal to permit the juror to testify about the juror's knowledge of criminal sanctions for a false voir dire answer harmed the defendant. Defense counsel had extensive opportunity to explore the juror's motives for fabrication. Accordingly, we are not prepared to say that the judge abused her discretion during the conduct of the hearing and in terminating it when she did.

The defendant further argues the juror should be presumed to be biased as a matter of law. He claims that the *Phillips* and *McDonough* decisions do not "foreclose the use of 'implied bias' in appropriate circumstances." *Smith* v. *Phillips*, 455 U.S. 209, 221 (1982) (O'Connor, J., concurring). *McDonough Power Equip., Inc.* v. *Greenwood*, 464 U.S. 548, 556-557 (1984) (Blackmun, J., concurring, with whom Stevens and O'Connor, JJ., joined). *Id.* at 552-559 (Brennan, J., concurring, with whom Marshall, J., joined). We acknowledge that in certain exceptional circumstances implied bias may be applicable,[5] but we reject Amirault's assertion that in the circumstances here presented we must attribute bias to the juror involved.

---

[5] It is difficult to state conclusively when implied bias must be found because each case will present unique facts. Justice O'Connor of the United States Supreme Court has suggested that the following are examples of "extreme situations that would justify a finding of implied bias": it is disclosed that "the juror is an actual employee of the prosecuting agency, that the juror is a close relative of one of the participants in the trial or the criminal transaction, or that the juror was a witness or somehow involved in the criminal transaction." *Phillips, supra* at 222 (O'Connor, J., concurring). Another conceivable illustration is a case where the trials of codefendants are severed and an individual observes the first trial and sits as a juror in the second trial. It is also likely that bias would be implied to a juror who has been the victim of a similar crime and has consciously concealed that fact from the parties or the court.

We have quarried the Massachusetts Reports and have not discovered a case in which a juror failed to disclose that he or she had been a victim of a same or similar crime. The closest factual situation we can find was presented in *Commonwealth v. Grant,* 391 Mass. 645, 651-653 (1984). There the defendant was on trial for kidnapping and aggravated rape. During the empanelment procedure, jurors were asked if they were conscious of any bias or prejudice. After the defendant was found guilty on the rape charge, defense counsel learned that a female juror had failed to reveal that ten years earlier her daughter had been a rape victim. The trial judge interviewed the juror, who explained that it simply had not occurred to her to disclose the information about her daughter. The judge subsequently denied defendant's motion for a new trial and we found no error.

The only case that defendant has cited to us that he claims is on point is *United States ex rel. DeVita* v. *McCorkle,* 248 F.2d 1 (3d Cir.), cert. denied, 355 U.S. 873 (1957). In *DeVita,* a writ of habeas corpus was granted because a juror failed to disclose that he had recently been the victim of an armed robbery. The defendant was charged with murder and armed robbery. *Id.* at 2-3. The court found that the "closeness of [the juror's] connection with the trial content [was] frightening," *id.* at 9, and, as such, established "colorable bias." *Id.* at 8. But *DeVita* is distinguishable from the present case on several grounds. First, because the juror was aware of his victimization, it is more proper to characterize it as involving "positive nondisclosure." *Brown* v. *United States,* 356 F.2d 230, 233 (10th Cir. 1966). Also, because the juror purposefully concealed his experience it may be appropriate to conclude that his bias was "actual and demonstrated." *United States* v. *Poole,* 450 F.2d 1082, 1083 (3d Cir. 1971). Finally, the *DeVita* court's operative concern was not the jury determination of the guilt or innocence of the defendant since the trial was held "to have the jury pass on the essentially judicial question of sentence, life or death . . . . For that kind of trial the Fourteenth Amendment insists on the most impartial tribunal the reasonable needs of society will permit." *DeVita, supra* at 8. This distinction was relied on by the Supreme Court of New Jersey when one of

DeVita's accomplices who had been convicted of murder in the first degree sought a new trial on the same ground. *State v. Rosania,* 33 N.J. 267, 274-275 (1960), cert. denied, 365 U.S. 864 (1961), and by the United States Court of Appeals for the Third Circuit in affirming the District Court's denial of habeas corpus relief. *Rosania* v. *New Jersey,* 299 F.2d 101, 102 (3d Cir.), cert. denied, 371 U.S. 893 (1962).

We have examined similar cases from other jurisdictions, but, because the determination of implied bias is so fact-sensitive, the only generalization that can be drawn is that the mere failure of a juror to disclose his or her prior experience as a criminal victim does not automatically entitle the defendant to a new trial. *Ex parte Ledbetter,* 404 So. 2d 731, 734 (Ala. 1981) (new trial granted). *People* v. *Resendez,* 260 Cal. App. 2d 1, 10-11 (1968) (new trial denied). See *People* v. *Diaz,* 152 Cal. App. 3d 926, 938 (1984) (new trial granted). Instead, we "must be satisfied that it is more probable than not that the juror was biased against the litigant." *State* v. *Wyss,* 124 Wis. 2d 681, 730 (1985). We believe that the facts of this case do not demonstrate that the juror was probably biased against Amirault. The judge found that the juror did not purposefully give an incorrect answer or intentionally withhold the information. Thus, we conclude that the trial judge did not abuse her discretion and was not clearly wrong in denying the defendant's motion for a new trial.

Finally, the defendant asserts that he is entitled to a new trial because he was denied the right to exercise a peremptory challenge to this juror and that the denial of this right is reversible error even without a showing of prejudice. But "[n]either the Federal nor the State Constitution guarantees a criminal defendant the right to exercise peremptory challenges." *Commonwealth* v. *Hutchinson,* 395 Mass. 568, 571 (1985). The right to peremptory challenges is simply a means of selecting an impartial jury. If the remedy of a new trial is not available for violation of the constitutional right to an impartial jury because of juror misconduct unless a court finds that the juror was actually or impliedly prejudiced, it cannot follow that denial of a nonconstitutional right involving jury selection is

reversible error without a showing of prejudice. Since we have concluded that there was no impairment of the defendant's right to an impartial jury, the defendant has not established that his right to exercise his peremptory challenges was prejudiced. See *McDonough, supra* at 555-556.

*Order denying motion for
new trial affirmed.*