**UNITED STATES, Appellee,**

v.

**Victor Manuel ALVAREZ, Defendant, Appellant.**

**UNITED STATES, Appellee,**

v.

**Diana MATOS, Defendant, Appellant.**

**Nos. 91–1286, 91–1287.**

United States Court of Appeals, First Circuit.

Heard Nov. 2, 1992.

Decided March 11, 1993.

Rachel Brill, Asst. Federal Public Defender, with whom Benicio Sanchez Rivera, Federal Public Defender, was on brief, for appellant Victor Manuel Alvarez.

Joseph C. Laws, Jr., by Appointment of the Court, for appellant Diana Matos.

Ivan Dominguez, Asst. U.S. Atty., with whom Daniel F. Lopez Romo, U.S. Atty., and Jose A. Quiles–Espinosa, Senior Litigation Counsel, were on brief, for appellee U.S.

Before TORRUELLA, Circuit Judge, CAMPBELL, Senior Circuit Judge, and SKINNER,* Senior District Judge.

SKINNER, District Judge.

Appellants Victor M. Alvarez and Diana Matos, common law husband and wife, were convicted by a jury in the District of Puerto Rico for aiding and abetting several drug offenses.[1] Miguel Flores, though not a party to this appeal nor convicted in the same trial, played a central role in the alleged cocaine trafficking scheme and pleaded guilty to the identical charges. Appellants defended against the charges alleging that they were unwitting participants in defendant Flores' cocaine trafficking scheme. Flores offered testimony to the same end. Each appellant advances numerous grounds for reversal.

Appellant Alvarez appeals his convictions alleging that the district court (1) erroneously refused to accept defendant Flores' guilty plea prior to the trial of Alvarez and Matos, (2) improperly prohibited Flores from testifying that his testimony exposed him to criminal penalties for cocaine trafficking, and (3) errored in denying appellant's motion for judgment of acquittal. We affirm with respect to Alvarez.

Appellant Matos joins the arguments of Alvarez and further appeals her convictions, alleging that the district court failed to exclude government evidence that was produced in violation of Rule 16, Federal Rules of Criminal Procedure. As to Matos, we reverse and remand to the district court for a new trial.

## I. Evidence

We recite the evidence in the light most favorable to the prosecution. *United States v. Campbell*, 874 F.2d 838, 839 (1st Cir.1989). The evidence showed that on December 8, 1989, Victor M. Alvarez, Diana Matos, and Miguel A. Flores arrived at the Luis Munoz Marin International Airport, San Juan, Puerto Rico, on American Airlines flight 904 from Caracas, Venezuela. A U.S. Customs Inspector, Francis Aponte, noticed that the three individuals appeared to be nervous and were talking secretively among themselves. Inspector Aponte approached the individuals, made routine inquiries of them, and referred the group to the secondary inspection station (a table used to examine the contents of a passenger's luggage). At that time, appellant Alvarez was permitted to leave the customs enclosure to purchase airplane tickets to New York for each member of the group. Inspector Aponte testified on cross-examination that he had not made any written record of the group's suspi-

* Of the District of Massachusetts, sitting by designation.

1. Alvarez and Matos were convicted for the possession of cocaine with intent to distribute in violation of 18 U.S.C. § 2 and 21 U.S.C. § 841(a)(1); the importation of cocaine into the customs territory of the United States in violation of 18 U.S.C. § 2 and 21 U.S.C. § 952(a); and the failure to declare cocaine in the cargo manifest or supply list of the aircraft which brought them into the customs territory of the United States in violation of 18 U.S.C. § 2 and 21 U.S.C. § 955.

cious behavior even though such information would have been an important part of the case report.

Carlos Ortiz, also a U.S. Customs Inspector, testified that he noticed two individuals, later identified as Flores and Matos, pushing two carts stacked with luggage and that he motioned for them to approach his secondary station. Inspector Ortiz requested Matos' and Flores' customs declaration cards, noting that both cards appeared to have been filled out by the same person. Matos complained that the airline had broken a bottle of liquor that she packed in her suitcase. During his search of the luggage, Ortiz noticed that the luggage contained both men's and women's clothing and he discovered a heavy, newspaper wrapped package. Ortiz unwrapped the package to find an aged painting of a young girl in a wooden frame. Ortiz asked Matos if she had purchased the picture on her trip, to which she answered "yes."

Inspector Ortiz consulted with a senior inspector, took the picture to a search room, and drilled into the picture frame using a small drill bit. Ortiz discovered a white powdery substance inside the wooden frame, which a field test indicated was cocaine. Matos and Flores were arrested and searched. Customs inspectors then located Alvarez in the airport's main concourse and placed him under arrest. Inspectors conducted a thorough search of the group's luggage, finding two additional paintings that concealed cocaine and discovering false bottoms in each of the six suitcases that also concealed cocaine. Customs agents determined that the group carried more than ten kilograms of cocaine.

A grand jury returned a three count indictment on January 3, 1990, against Matos, Alvarez, and Flores. Each defendant pleaded not guilty. On October 2, 1990, Flores filed a notice to plead guilty on one count of the indictment. It appears, however, that Flores intended to plead guilty on all three counts, and on October 5, 1990, he amended his petition accordingly. On October 5, 1990, the district court extensively questioned Flores before declining to accept his plea. Flores asserted that Alvarez and Matos had been unaware of any plan to import cocaine and that he, himself, was solely responsible for the crime. The judge suspended the proceeding because she was unsure whether Flores could plead guilty to aiding and abetting a crime while simultaneously proclaiming the innocence of the other alleged participants.

On October 9, 1990, the Flores plea hearing resumed. The judge explained that Flores' refusal to acknowledge the aiding and abetting modality did not preclude his guilty plea. The court then engaged in an extensive colloquy with defendant Flores in accordance with Rule 11 of the Fed. R.Crim.P. The judge noted that Flores had proclaimed the innocence of Alvarez and Matos in a confidential letter that Flores had written to the judge from prison. Flores confirmed sending the letter and explained that appellants were friends of his from New York, the home of all the parties. Flores had invited appellants to join him on a cruise from San Juan to several caribbean islands, including a stop in Caracas, Venezuela. While on the cruise, Flores met a man who offered him three thousand dollars to bring several pictures from Venezuela to Puerto Rico. Flores agreed to meet the man at a hotel in Caracas and to carry the pictures into Puerto Rico as a passenger on a commercial airline. Flores did not tell Alvarez or Matos of his scheme.

Flores, Alvarez, and Matos left the ship while it was in port in Caracas to visit the beach. Flores claimed to have tricked the appellants into missing the ship's scheduled departure because he did not want to fly to Puerto Rico alone. After missing the ship, Flores took Alvarez and Matos to the predesignated hotel, checked the group into two rooms, secretly picked up the pictures, and borrowed several pieces of luggage from the man after explaining that the group had left their bags on the cruise ship. Flores arranged to meet the man in Puerto Rico at which time Flores would deliver the pictures and return the borrowed luggage. Flores claimed that he never saw the cocaine or even knew for

certain that he was carrying cocaine,[2] but "imagined" that the frames concealed cocaine because "nobody is going to pay you three thousand dollars just to bring in three pictures." Flores also denied knowing that the borrowed suitcases concealed cocaine. Flores explained that Alvarez, Matos, and he purchased new cloths in Caracas and spent several days in the hotel before returning to Puerto Rico. Flores packed the three pictures in separate bags and covered them with cloths. Flores maintained that appellants were totally unaware of his trafficking scheme during the entire trip.

The district court declined Flores' plea, stating:

> Now, you have stated that you did not know what was in the picture frames, you did not know what was in any of the luggage that you carried. That in itself carries with it a defense that you could present to the jury. So I am not convinced that you have made a plea of guilty that I could accept that has a basis in fact that contains all elements of the offenses charged which is a requirement for the court to accept your plea of guilty. Among those elements, those of knowledge and intent.

Flores then moved to sever his trial from that of the appellants. Finding that it would be impossible to mount an adequate defense if Flores testified in favor of Alvarez and Matos, the district court granted both the motion to sever Flores' trial and Flores' request to be tried after appellants.

At trial, Matos called Flores as a witness who offered essentially the same testimony as given to the judge during his attempted plea. During examination by Alvarez, Flores was permitted to testify that it was a crime to bring cocaine into the United States, but he was not permitted to testify as to the punishment that could be imposed for his crime or as to his aborted plea attempt. The jury found Matos and Alvarez guilty on all charges.

One week later, Flores again came before the district court to offer his guilty plea, but this time he admitted that he knew cocaine was concealed within the picture frames. The court accepted his plea.

## II. Alvarez's Conviction

Appellant Alvarez attacks his conviction on three fronts. First, Alvarez alleges that his defense was prejudiced because the district court erroneously failed to accept defendant Flores' guilty plea prior to the trial of Alvarez and Matos. Alvarez claims the judge relied on "perceived technical deficiencies" with Flores' plea, rather than crediting the weight of Flores' testimony that indicated he accepted full responsibility for the crime. This error, Alvarez argues, prejudiced his defense because he was deprived of the opportunity to put Flores' guilty plea before the jury as persuasive evidence of Mr. Flores' credibility and sincerity.

We are unpersuaded by appellant's argument. A criminal defendant has no constitutional right to plead guilty. *North Carolina v. Alford*, 400 U.S. 25, 38 n. 11, 91 S.Ct. 160, 168 n. 11, 27 L.Ed.2d 162 (1970) (a trial judge need not "accept every constitutionally valid guilty plea merely because a defendant wishes so to plead"). Nor does Rule 11 of the Federal Rules of Criminal Procedure create such a right. *United States v. Bednarski*, 445 F.2d 364, 365–66 (1st Cir.1971). Here, the district court conducted a prolonged hearing to determine the sufficiency of Flores' plea and carefully considered his testimony. While Alvarez might reach a different conclusion than the judge as to the factual sufficiency of Flores' attempted plea, we find no error in district court's determination.

Second, Alvarez alleges that the district court violated both the Compulsory Process and the Confrontation Clauses of the Sixth Amendment by improperly limiting the scope of Flores' testimony and, thereby, depriving the defendants of force-

---

**2.** Flores explained to the judge, "At no time did [the man] tell me it was cocaine. He told me, 'I want you to take these pictures for me. Take them there.' He says, 'it doesn't contain anything dangerous.'"

ful evidence of Flores' sincerity and credibility. On direct examination, Matos asked Flores, "You have testified under oath regarding the exceptance [sic] of a criminal offense. Are you aware of the punishment that could be imposed for this crime?"

The district court sustained the government's objection to the question, reasoning that Flores had not actually pleaded guilty and that he might or might not be found guilty at a later trial. Moreover, Flores' testimony would not necessarily be admissible against him in his own trial unless he chose to testify in his own defense. The judge did, however, allow Matos to ask Flores if he had previously asserted the appellants' innocence.

Alvarez then conducted what he termed a "cross-examination" of Flores—a characterization rejected by the trial court. The government argued that even though Flores was not a joint witness of the appellants, cross-examination was unavailable because Flores was clearly testifying in Alvarez's favor. Though we are inclined to agree with the trial court, we need not decide the issue because Alvarez's Sixth Amendment objection fails regardless of how the examination is characterized. Flores was permitted to testify on "cross-examination" that he knew it was a crime to bring cocaine into the United States and that he had "wanted to talk about [his story] for some time."

■ The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to be confronted with the witnesses against him." Cross-examination, the primary interest secured by the Confrontation Clause, is "the principal means by which the believability of a witness and the truth of his testimony are tested." *Kentucky v. Stincer*, 482 U.S. 730, 736, 107 S.Ct. 2658, 2662, 96 L.Ed.2d 631 (1987) (quoting *Davis v. Alaska*, 415 U.S. 308, 316, 94 S.Ct. 1105, 1110, 39 L.Ed.2d 347 (1974)). The Confrontation Clause "mandates a 'minimum threshold of inquiry' be afforded a defendant in the cross-examination of adverse witnesses," *Brown v. Powell*, 975 F.2d 1, 5 (1st Cir.

1992) (quoting *United States v. Jarabek*, 726 F.2d 889, 902 (1st Cir.1984)), *cert. dismissed*, —— U.S. ——, 113 S.Ct. 1035, 122 L.Ed.2d 179 (1993), but the right to cross-examination is, of course, not absolute. Trial judges retain broad discretion to impose reasonable limits on the scope of cross-examination. *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S.Ct. 1431, 1435, 89 L.Ed.2d 674 (1986). On appeal, we review to determine:

> whether the jury had sufficient other information before it, without the excluded evidence, to make a discriminating appraisal of the possible biases and motivations of the witnesses.

*Brown*, 975 F.2d at 5 (quoting *United States v. Tracey*, 675 F.2d 433, 437 (1st Cir.1982)). The issue here is whether the district court abused its discretion and committed a reversible error when it prevented the jury from learning of the exact penalties that Flores would face if convicted of cocaine trafficking. We conclude the court committed no error.

■ Flores was allowed to put his entire story before the jury, including important information that supported his credibility. The jury heard Flores testify that importing cocaine into the U.S. is a crime. We are confident that the jury knew that a conviction for importing a large quantity of cocaine carries a serious punishment. Though the jury did not learn of the precise penalty imposed for drug trafficking or that Flores had attempted to plead guilty, the decision to exclude this evidence was within the district court's discretion. The judge could properly conclude that such testimony might mislead or confuse the jury; particularly where, as here, the witness sought to testify to the same penalties faced by the defendants.

We note that Sixth Amendment right of cross-examination is directed at uncovering witness bias and untruthfulness. In this case, however, Alvarez sought to use "cross-examination" to bolster the witness' credibility. Contrary to appellant's assertion, exposing a witness' bias to lie can, indeed, be more important than exploring a witness' motivation for telling the truth.

*Cf.* Fed.R.Evid. 608 (evidence of truthful character is admissible only after the character of the witness for truthfulness has been attacked); Fed.R.Evid 801 (prior consistent statements generally admissible only to rebut an express or implied charge of recent fabrication or improper influence or motivation).

Alvarez also asserts that the district court violated the Compulsory Process Clause of the Sixth Amendment. According to Alvarez, the district court interfered with his constitutional right to present witnesses in his own defense when it excluded an important portion of Flores' testimony that weighed in favor of Flores' credibility. The Compulsory Process Clause guarantees every criminal defendant "the right ... to have compulsory process for obtaining witnesses in his favor ..." This fundamental right, however, is not absolute. *Campbell,* 874 F.2d at 851; *Chappee v. Vose,* 843 F.2d 25, 28 (1st Cir.1988). The Supreme Court has explained, "The Sixth Amendment does not confer the right to present testimony free from the legitimate demands of the adversarial system ..." *United States v. Nobles,* 422 U.S. 225, 241, 95 S.Ct. 2160, 2171, 45 L.Ed.2d 141 (1975). As explained more fully above, we conclude that the district court acted properly to limit Flores' testimony which might have mislead or confused the jury.

■ Third, Alvarez complains that the district court errored in denying his Rule 29 motion for judgment of acquittal.[3] Alvarez contends that the evidence was insufficient to prove beyond a reasonable doubt that he was an active participant in the scheme to import cocaine. We review the evidence to determine whether the evidence as a whole, taken in the light most favorable to the prosecution, together with all reasonable inferences favorable to it, would allow a rational fact finder to conclude beyond a reasonable doubt that the defendant was guilty as charged. *United States v. Maraj,* 947 F.2d 520, 522–23 (1st Cir.

1991); *United States v. Vargas,* 945 F.2d 426, 427–28 (1st Cir.1991). A conviction may be grounded in whole or in part on circumstantial evidence. *Maraj,* 947 F.2d at 523. Moreover, because the jury is entrusted with the responsibility for making credibility determinations and is empowered to accept or reject, in whole or in part, a witness' testimony, we will not weigh witness credibility on appeal. *Maraj,* 947 F.2d at 523; *Vargas,* 945 F.2d at 427.

■ Guilt for aiding and abetting attaches only where "the defendant associated himself with the venture, participated in it as in something he wished to bring about, and sought by his actions to make it succeed." *United States v. Rodriguez Cortes,* 949 F.2d 532, 539 (1st Cir.1991). Neither mere association with the principal nor mere presence at the scene of a crime, even when combined with knowledge that a crime was to be committed, is sufficient to establish aiding and abetting liability. *United States v. Aponte–Suarez,* 905 F.2d 483, 491 (1st Cir.) (quoting *United States v. Francomano,* 554 F.2d 483, 486 (1st Cir. 1977)), *cert. denied,* 498 U.S. 990, 111 S.Ct. 531, 112 L.Ed.2d 541 (1990). Guided by these standards of review, we are persuaded that Alvarez's conviction is supported by sufficient evidence of guilt. There is no dispute that Alvarez was traveling for an extended period of time with Matos and Flores and that a very large quantity of cocaine was concealed in the luggage carried by the group. Moreover, there is sufficient evidence upon which a reasonable jury could conclude beyond a reasonable doubt that Alvarez participated in or sought to assist Flores' scheme to import cocaine into the U.S.

The evidence established that a Customs Inspector noticed the group talking "secretively" at the airport; that two of the bags that concealed cocaine carried name tags bearing Alvarez's name; and that Alvarez and his common law wife had no means of

---

**3.** Rule 29 provides in relevant part,

The court on motion of a defendant or of its own motion shall order the entry of judgment of acquittal of one or more offenses charged in the indictment or information after the evidence on either side is closed if the evidence is insufficient to sustain a conviction of such offense or offenses.

Fed.R.Crim.Proc. 29.

support other than welfare, food stamps, and odd jobs and, yet, they could still afford to fly to Puerto Rico, travel on a cruise ship, stay in a Venezuelan hotel for several days, and purchase new cloths to replace those purportedly left on the cruise ship. In addition, the government was able to highlight certain inconsistencies in the testimony offered by Flores and Matos.[4] Most significantly, the government produced a photograph apparently taken on the cruise ship that showed Matos wearing a striped dress that according to her story was not purchased until *after* she disembarked from the ship in Caracas. Matos explained that she was apparently mistaken about the items of clothing she carried with her when she left the ship. The government also introduced evidence that the cruise ship operators searched the cabins used by Matos, Alvarez, and Flores and did not find the luggage purportedly left behind by the appellants. The witness, however, did not conduct the search himself and had no knowledge of how the search was conducted.

Though the evidence against Alvarez is not overwhelming, when it is viewed in a light most favorable to the prosecution it is sufficient to support the verdict. We, therefore, affirm Alvarez's conviction.

### III. Matos' Conviction

In addition to joining in the arguments advanced by Alvarez, Matos contends that her conviction must be reversed because the government presented in its case-in-chief an oral statement allegedly made by Matos which the government failed to disclose during pre-trial discovery as required by Fed.R.Crim.P. Rule 16. Specifically, Matos challenges a portion of the testimony given by Officer Ortiz, a U.S. Customs Inspector who searched Matos' luggage. Officer Ortiz testified that during the search he asked Matos if she had purchased the picture on her trip, to which she answered "yes." Ortiz's testimony was the only direct evidence that the incriminating picture belonged to Matos.

The substance of Officer Ortiz's testimony came as a surprise to Matos because she had made two prior requests of the government—first by letter on January 11, 1990 and second by formal motion on January 22, 1990—to comply with the discovery provisions of Rule 16, including a specific request for any "oral statement[s of the defendant] which the Government intends to offer in evidence at the trial." The government responded by expressly acknowledging its obligations under Rule 16 and by producing several documents. The government, however, made no mention of Matos' alleged statement at that time or at any time before the damaging testimony came before the jury. During cross-examination, Officer Ortiz admitted that his prior testimony at a preliminary hearing and before a grand jury did not include any reference to Matos' alleged statement concerning the picture.

The following morning, Matos moved to strike Officer Ortiz's testimony and for the court to admonish the jury to disregard the testimony. Matos argued that prosecution *records showed that Officer Ortiz had told* the government of Matos' alleged statement in April 1990, but that the government failed to produce the statement despite repeated requests by Matos. The judge denied the motion without giving an explanation.

■ Rule 16 imposes an obligation on both the criminal defendant and the government to produce or disclose to the opposing party certain relevant evidence prior to trial. The provisions of Rule 16(a)(1)(A) in effect at the time of trial provided, in relevant part:

Upon request of a defendant the government shall permit the defendant to inspect and copy ... the substance of any oral statement which the government intends to offer in evidence at the trial made by the defendant whether before or after arrest in response to interrogation by any person then known by the defendant to be a government agent.

Fed.R.Crim.P. 16(a)(1)(A). These mandatory discovery provisions are intended to con-

---

**4.** Alvarez did not testify at trial.

tribute to the fair and efficient administration of criminal justice by providing the defendant with sufficient information upon which to base an intelligent a plea; by minimizing the undesirable effect of surprise at trial; and by contributing to the accuracy of the fact finding process. Fed. R.Crim.P. 16, *advisory committee's note.* Where a party fails to comply with these discovery provisions, Rule 16 empowers the district court to order the party to comply with the rule, grant a continuance, exclude the non-complying evidence, or enter other such relief as it considers just. Fed. R.Crim.P. 16(d)(2). We review a district court's ruling on the effect of a failure to provide pretrial discovery only for abuse of discretion. *United States v. Nickens,* 955 F.2d 112, 126 (1st Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 108, 121 L.Ed.2d 66 (1992); *Rodriguez Cortes,* 949 F.2d at 546; *see* Fed.R.Crim.P. 16(d)(2). To succeed in obtaining a reversal on appeal, a defendant must prove both an abuse of discretion and prejudice. *Nickens,* 955 F.2d at 126; *Rodriguez Cortes,* 949 F.2d at 546. We reverse.

■ We believe the trial court erred when it denied Matos' motion to exclude the alleged statement or to hold a suppression hearing without first making a finding as to whether the government acted in bad faith and whether Matos was prejudiced by admission of the statement. We generally defer to the judgment of a district judge who is better suited to make factual determinations based on first hand observation of the evidence. In this case, however, the judge failed to make even a threshold inquiry into the circumstances leading to nondisclosure of the statement. The court neither heard evidence nor made factual findings concerning the potential prejudice flowing from a discovery violation, the relative importance of Ortiz's testimony, and the existence of prosecutorial bad faith. *See Nickens,* 955 F.2d at 126. This was error.

Moreover, this error prejudiced appellant Matos. The alleged Matos statement provided a critical link between Matos and the effort to smuggle the cocaine laden picture frame into Puerto Rico. To establish guilt

for aiding and abetting, "the government must prove that the defendant associated himself with the venture, participated in it as in something he wished to bring about, and sought by his actions to make it succeed." *Rodriguez Cortes,* 949 F.2d at 539 (quoting *United States v. Garcia-Rosa,* 876 F.2d 209, 217 (1st Cir.1989), *cert. denied,* 493 U.S. 1030, 110 S.Ct. 742, 107 L.Ed.2d 760 (1990)). The statement attributed to Matos was a very significant piece of evidence that indicated Matos was a participant in the crime, rather than merely being an innocent bystander present at the scene of a crime. Similarly, the alleged statement fundamentally sabotaged Matos' defense that she was an unwitting participant in Flores' cocaine trafficking venture. There is a substantial likelihood that the statement figured prominently in the jury's decision to reject Flores' account of the incident, which wholly exculpated appellants.

Given the central importance of the alleged statement, the government's failure to disclose it as required by Rule 16 had additional grave consequences for Matos. First, Matos was deprived of any meaningful opportunity to investigate the circumstances of her alleged statement and to attempt to suppress it. Significantly, the government disclosed during pretrial discovery a statement made by Alvarez, which Alvarez successfully suppressed. Second, not knowing of the alleged statement, Matos was deprived of the opportunity to design an intelligent litigation or plea strategy that responded to the alleged statement.

The government contends that no prejudice attached because "it is doubtful that counsel for appellant would not anticipate or contemplate that such a statement might exist." Even if this argument were not inconsistent with the mandatory language of Rule 16, we would flatly reject it as being incompatible with common sense and fundamental fairness. The government also contends that the cross-examination of Officer Ortiz effectively impeached his testimony and essentially cured whatever prejudice might have existed. While we have sometimes considered effective cross-

examination of witness when weighing potential prejudice presented by that witness' testimony, *Nickens*, 955 F.2d at 126; *United States v. Samalot Perez*, 767 F.2d 1, 4 (1st Cir.1985), those cases involved the admission of cumulative evidence that was regarded as harmless error. In this case, the alleged statement was vital to the conviction.

Finally, the government argues that since Matos did not present the trial judge with any specific grounds for suppressing the alleged statement, the district court correctly denied Matos' request for a suppression hearing. During a discussion with Matos' counsel, the judge repeatedly asked if the defendant had any grounds to suppress the statement. Counsel responded that he learned of the statement only the day before, that he had no information regarding the statement, and when pressed by the judge, stated that *at that time* he had no grounds to suppress the statement other than the violation of Rule 16. We are not surprised that Matos was unprepared to articulate a particular ground for suppressing the statement under these circumstances and in the middle of a trial. The one possible curative course, suspending the trial and holding a suppression hearing, was erroneously rejected by the district court.

The government is wholly responsible for unfairly surprising the defendant and should not benefit from its own violation of Rule 16.

In summary, we affirm the conviction of Alvarez and reverse and remand for a new trial as to Matos.