## COMMONWEALTH *vs.* GARY EMERSON.

Suffolk. September 8, 1999. - November 17, 1999.

Present: MARSHALL, C.J., ABRAMS, LYNCH, GREANEY, & IRELAND, JJ.

*Homicide. Witness,* Expert. *Practice, Criminal,* Disclosure of evidence, Instructions to jury, Jury and jurors, Capital case. *Jury and Jurors.*

In a murder case in which the autopsy report listed the cause of death as "strangulation by ligature," but the Commonwealth did not divulge as part of discovery that the medical examiner would testify that the victim's tank top was "consistent" with that ligature, the defendant demonstrated no prejudice to his case, where he thoroughly and effectively cross-examined the medical examiner and where the Commonwealth did not put forward the theory that the top was the actual murder weapon. [380-382]

At a murder trial, no view of the evidence warranted an instruction on voluntary manslaughter and there was no error in the judge's refusal to give such an instruction. [382-384]

There was no reversible error or abuse of discretion at a murder trial in the judge's finding indifferent jurors who declared their impartiality and to whom the defendant had made no objection. [384]

INDICTMENT found and returned in the Superior Court Department on April 5, 1996.

The case was tried before *James P. Donohue,* J.

*Paul F. Ware, Jr. (Christopher T. Holding & Sarah E. Walters* with him) for the defendant.

*Eric Neyman,* Assistant District Attorney, for the Commonwealth.

LYNCH, J. The defendant was convicted of murder in the first degree under the theories of deliberate premeditation and extreme cruelty or atrocity. He raises three issues on appeal, claiming that (1) the Commonwealth violated a discovery order by failing to disclose material portions of the medical examiner's testimony; (2) the trial judge erred in refusing to instruct the jury on voluntary manslaughter; and (3) the judge erred in not dismissing two jurors. For the reasons stated below we affirm his conviction and conclude there is no reason to exercise our power under G. L. c. 278, § 33E.

1. *Facts.* On March 20, 1996, the decomposing body of the victim was found in her Boston apartment. The cause of death was strangulation by ligature. She had sustained several blows to the head and multiple lacerations, including a severed ear-lobe. There also was a pink "tank top" pulled up near the victim's neck. At trial, the medical examiner said that the tank top was consistent with the ligature that caused her death. The defendant was the last person known to have seen the victim alive.

When the police searched the victim's apartment, they did not find a murder weapon. The police did find, among other items, a blood-stained paper towel "rolled up in such a manner [that] it indicated that it had perhaps been placed over a finger that had been cut." A drop of blood was found on the victim's back, which when tested matched the defendant's blood type and deoxyribonucleic acid (DNA).

At his home in Swansea, the defendant attempted to commit suicide.[1] When he regained consciousness on March 20, 1996, he called for emergency help and was taken to a hospital. He had a crushing injury to the tip of one of his fingers, requiring amputation. He told the hospital staff that an automobile door had slammed on his finger.

The defendant and the victim at one time had a "dating" relationship. In the course of that relationship the victim had obtained a protective order against the defendant, but did not renew it.

On March 18, 1996, the defendant, the victim, and a friend were at the victim's apartment for the afternoon smoking crack cocaine. At some point in the evening, the friend left the victim's apartment. As he was leaving, the victim told him that she was going to ask the defendant to leave also. At approximately 8 P.M., the victim's downstairs neighbor heard a loud male voice and banging sounds "like furniture . . . being tossed around." The banging lasted until approximately 11 P.M. Later that night, the neighbor was awakened by "one tremendous bang" that, among other things, shook her windows. The neighbor also heard footsteps in the apartment the next evening, March 19, 1996.

Ten days after the murder the victim's brother was cleaning

---

[1]The defendant took an overdose of a prescription drug, lacerated both arms, and turned on his gas oven. He claims he made the suicide attempt on March 19, 1996.

out the victim's apartment and discovered a bloody knife under the sofa. The next day, the victim's brother returned to the apartment. While in the kitchen, he unrolled a mat and discovered a bloody hammer.[2] The police had not found either in their search. The hammer and knife were examined, and showed traces of blood consistent with the blood of the victim on them, but no clear fingerprints.

2. *Failure to disclose.* The Commonwealth was ordered to divulge to defense counsel the substance of its expert testimony. Mass. R. Crim. P. 14 (a), 378 Mass. 874 (1979). Pursuant to this order the defense received the autopsy report which listed the cause of death as "strangulation by a ligature," but were not told that the medical examiner would testify that the pink tank top found near the victim's neck was consistent with the ligature used to strangle her.[3] During a prior trial which ended in a mistrial the Commonwealth's witness, a detective, testified that the police never found the murder weapon and that "to this day we do not know what type of ligature was used."

The defendant argues that this portion of the medical examiner's testimony was part of the Commonwealth's substantive case against the defendant and should have been disclosed to defense counsel.[4] See Mass. R. Crim. P. 14 (a) (4). The Commonwealth maintains that the opinion was not substantive to the defendant's case and was elicited simply as a response to a hypothetical question.

We do not decide whether the Commonwealth had a duty to disclose this testimony because we conclude that no prejudice arose from its failure to do so.

Even where there has been insufficient disclosure, we look to see "whether, given a timely disclosure, the defense would have been able to prepare and present its case in such a manner

---

[2]The police videotaped their search and the kitchen mat was not rolled up at the time they conducted their search.

[3]The defendant correctly points out that "ligature" could be anything. See, e.g., *Commonwealth* v. *Eagles,* 419 Mass. 825, 827 (1995) (pillowcase); *Commonwealth* v. *Fitzmeyer,* 414 Mass. 540, 543 (1993) (oxygen tube).

[4]The first trial against the defendant ended in a mistrial. He argues that the prosecution's lack of disclosure was even more significant than it otherwise might have been because the prosecution learned at the first trial that the defense's strategy was to argue that no murder weapon had been found. The defendant argues that the nondisclosure shows bad faith on the part of the Commonwealth. The standard for delayed disclosure is discussed *infra.* See *Commonwealth* v. *Baldwin,* 385 Mass. 165, 175 (1982).

as to create a reasonable doubt that would not otherwise have existed." *Commonwealth* v. *Baldwin*, 385 Mass. 165, 175 (1982), quoting *Commonwealth* v. *Wilson*, 381 Mass. 90, 114 (1980). See *Commonwealth* v. *Donovan*, 395 Mass. 20, 24 (1985), and cases cited.[5] We look to "the consequences of the delay . . . and . . . ask whether the prosecution's [insufficient disclosure was timely] to allow the defendant 'to make effective use of the evidence in preparing and presenting his case.' " *Commonwealth* v. *Baldwin, supra*, quoting *Commonwealth* v. *Wilson, supra.*

Here the medical examiner did not say the tank top *was* the murder weapon, only that it was consistent with the kind of ligature that had been used to strangle the victim. Furthermore, we have said that insufficient disclosure can be mitigated by effective cross-examination of the witness by defense counsel. See *Commonwealth* v. *Baldwin, supra* at 176; *Commonwealth* v. *Gilbert*, 377 Mass. 887, 895 (1979). Here, defense counsel thoroughly cross-examined the medical examiner. The cross-examination highlighted the speculative nature of the medical examiner's opinion. The medical examiner admitted further that there was no reference to the tank top in the autopsy report, that other items of clothing might have been used as a ligature,[6] and that the medical examiner was not stating, with certainty, that the tank top *was* the murder weapon. The defense also attacked the medical examiner's testimony in closing argument.[7] See *Commonwealth* v. *Adrey*, 376 Mass. 747, 755 (1978), citing *Commonwealth* v. *Dabrieo*, 370 Mass. 728, 743-744 (1976) (where undisclosed exculpatory testimony turned on witness

---

[5]Where there is a delay in disclosure, the standard of review is the same for both inculpatory and exculpatory evidence. See *Commonwealth* v. *Baldwin, supra.*

[6]The medical examiner admitted that the ligature could have been a "shirt, pants, underclothes . . . a belt or a scarf" but definitely not "a narrow piece of rope or wire."

[7]Defense counsel in closing argued: "It is inconceivable that there's no blood on that tank top and yet we have no evidence in this case of any blood of the defendant on what is now at the eleventh hour thrown at us as a possible but not necessarily the murder weapon."

In her closing, the prosecutor used the medical examiner's testimony to argue that the tank top "ruin[ed] the argument that no murder weapon was found." Such an inference from the evidence is allowed. See *Commonwealth* v. *Raymond*, 424 Mass. 382, 390 (1997), quoting *Commonwealth* v. *Lamrini*, 392 Mass. 427, 431 (1984).

credibility, "ultimate and effective presentation of the evidence to the jury cured any error").

The defendant points to *United States* v. *Alvarez*, 987 F.2d 77, 85-86 (1st Cir.), cert. denied, 510 U.S. 849 (1993), to argue that effective cross-examination is not enough to counter the effects of undisclosed testimony. That case is not persuasive because there, the undisclosed testimony was a statement by one defendant which was the only evidence linking her to the crime. Here, the testimony was only peripherally related to the Commonwealth's theory of the cause of death.

The defendant argues further that, had he known sooner about the medical examiner's opinion, he would have used a different trial tactic. He states that he would have argued that, given the wound on the defendant's finger, if the tank top were used by the defendant, there would have been significant amounts of his blood on the tank top, as well as on the victim's head and shoulders. He maintains that by the time the medical examiner testified, it was too late to make this argument to the jury because the defense had already relied on testimony of several witnesses who stated that the murder weapon had not been found. These arguments appear to overlook the fact that the medical examiner did not state that the tank top was the murder weapon.

It is also significant that defense counsel did not request a continuance so that he would have time to investigate the testimony. "[U]nless the undisclosed evidence is either virtually destructive of the defendant's case . . . or is strongly supportive of innocence . . . defense counsel should, when faced with delayed disclosure situations, seek 'additional time for investigative purposes.' " *Commonwealth* v. *Baldwin, supra* at 176-177, quoting *Commonwealth* v. *Cundriff,* 382 Mass. 137, 150 (1980), cert. denied, 451 U.S. 973 (1981). See *Commonwealth* v. *Gordon,* 422 Mass. 816, 836 (1996).

We conclude that, even if the information should have been disclosed prior to trial, the defendant was not prejudiced by the delay.

3. *Voluntary manslaughter instruction.* The defendant argues that the judge committed reversible error by refusing to instruct the jury on voluntary manslaughter.

A voluntary manslaughter instruction *must* be given "if, on 'any view of the evidence,' regardless of the credibility, manslaughter may be found." *Commonwealth* v. *Carrion,* 407

Mass. 263, 266 (1990), quoting *Commonwealth* v. *Pitts*, 403 Mass. 665, 667 (1989), and cases cited. The evidence must be viewed in the light most favorable to the defendant. See *Commonwealth* v. *Pierce*, 419 Mass. 28, 31 (1994). An instruction need not be given if there is no evidence supporting a finding of manslaughter. See *Commonwealth* v. *Carrion, supra* at 267, and cases cited.

Voluntary manslaughter "is [an] unlawful homicide arising not from malice, but . . . in . . . 'sudden passion induced by reasonable provocation, sudden combat, or excessive force in self-defense.' " *Commonwealth* v. *Carrion, supra* at 267, quoting *Commonwealth* v. *Nardone*, 406 Mass. 123, 130-131 (1989). "A jury must be able to infer that a reasonable person would have become sufficiently provoked, and that the defendant was in fact provoked." *Commonwealth* v. *Pierce, supra*, citing *Commonwealth* v. *Garabedian*, 399 Mass. 304, 313 (1987). See *Commonwealth* v. *Seabrooks*, 425 Mass. 507, 514 (1997). However, the jury are not "permitted merely to speculate on whether the defendant . . . might have been roused to the heat of passion." *Commonwealth* v. *Carrion, supra* at 267, quoting *Commonwealth* v. *Walden*, 380 Mass. 724, 727 (1980). Arguments or insults are not enough to establish reasonable provocation. See *Commonwealth* v. *Carrion, supra*, quoting *Commonwealth* v. *Zukoski*, 370 Mass. 23, 28 (1976), and case cited. "Physical contact between a defendant and a victim is not always sufficient to warrant a manslaughter instruction even when contact was initiated by the victim." *Commonwealth* v. *Pierce, supra* at 31, and case cited.

In this case, there was no evidence that warranted the finding that the defendant acted in a sudden heat of passion. The evidence that a neighbor heard a loud male voice she could not identify coming from the victim's apartment and that there were banging noises is obviously insufficient to support such a conclusion.

The defendant points to his injuries, particularly to the injury to his finger which required its amputation. He claims that the jury could have found that the victim attacked the defendant with a hammer, injuring him so severely that he reacted to sudden combat or reasonable provocation. This claim is based on speculation, not evidence. In fact, the defendant told hospital personnel that he slammed his finger in an automobile door, and told police his injuries were self-inflicted.

The record is similarly devoid of any evidence that the defendant was roused to a sudden heat of passion. No error arose from the judge's refusal to give an instruction on voluntary manslaughter.

4. *Juror bias.* The defendant argues for the first time on appeal that the judge's failure, sua sponte, to exclude two jurors for cause who had family experience with domestic violence violated his right to an impartial jury under the Sixth Amendment to the United States Constitution and arts. 12 and 29 of the Massachusetts Declaration of Rights.

Not only did the defendant fail to object at trial to these jurors, he told the judge that they were satisfactory.

Juror bias is a question of fact to be determined by the judge. A finding that a juror is impartial will not be overturned on appeal unless the defendant makes a clear showing of abuse of discretion or that the finding was clearly erroneous. See *Commonwealth* v. *Amirault,* 399 Mass. 617, 626 (1987). This court follows the Supreme Court standard set out in *McDonough Power Equip., Inc.* v. *Greenwood,* 464 U.S. 548 (1984), and *Smith* v. *Phillips,* 455 U.S. 209 (1982). See *Commonwealth* v. *Amirault, supra* at 624-625. In order "to obtain a new trial . . . a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." *McDonough Power Equip., Inc.* v. *Greenwood, supra* at 556.

The jurors did not attempt to conceal anything nor were they themselves the victims of domestic violence. Furthermore the jurors unequivocally stated that they could be impartial. *Commonwealth* v. *Vann Long,* 419 Mass. 798, 804 & n.5 (1995). There is nothing in the decided cases to suggest that, in these circumstances, the judge erred, as a matter of law, in finding these jurors indifferent. See *id.; Commonwealth* v. *Auguste,* 414 Mass. 51, 56-58 (1992); *Commonwealth* v. *Amirault, supra* at 626.

Finally, we have reviewed the record and the transcript as required by G. L. c. 278, § 33E, and conclude that there is no substantial likelihood of a miscarriage of justice.

*Judgment affirmed.*