COMMONWEALTH *vs.* TIMOTHY D. GUISTI.

Norfolk. March 12, 2001. - May 29, 2001.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, SOSMAN, & CORDY, JJ.

*Evidence,* Expert opinion, Relevancy and materiality. *Rape. Practice, Criminal,* Jury and jurors, Voir dire, Fair trial. *Jury and Jurors. Constitutional Law,* Fair trial.

At a trial on indictments charging rape, the judge properly exercised her discretion in excluding expert testimony that the defendant's self-inflicted wounds indicated a suicide attempt, which testimony was offered to support the defendant's testimony that his "sole intent" in going to the victim's apartment was to commit suicide and that the victim agreed to have sexual intercourse with him to prevent him from killing himself, where such evidence was irrelevant to the issue of consent, and where the defendant's contention that he actually intended to kill himself had no bearing on whether the victim feared bodily injury to herself or whether her fear was reasonable. [247-249]

Where, based on an affidavit of an attorney in a criminal case, which provided a specific account of a juror's e-mail messages and their contents sent during trial, the judge would have been warranted in allowing the defendant's postverdict motion for a voir dire of the juror to determine whether the jury were subject to extraneous influences, this court remanded the case to the trial judge to conduct a voir dire limited to determining whether the juror was in fact the woman who posted the e-mail messages and, if so, whether she received any responses, the contents of any such responses, and whether the juror communicated the substance of any such responses to other jury members prior to or during deliberations; however, no requisite showing of juror bias was made to warrant a postverdict inquiry as to whether the juror was biased against the defendant. [249-254]

INDICTMENTS found and returned in the Superior Court Department on December 17, 1997.

The cases were tried before *Judith Fabricant,* J., and a motion for a voir dire of a juror, filed on April 2, 1999, was heard by her.

The Supreme Judicial Court granted an application for direct appellate review.

*Catherine K. Byrne,* Committee for Public Counsel Services, for the defendant.

*Susanne M. O'Neil,* Assistant District Attorney, for the Commonwealth.

Cowin, J. The defendant was convicted of aggravated rape, rape (on two indictments), threatening to commit a crime, and intimidating a witness.[1] He appealed and we granted his application for direct appellate review. On appeal, he claims that the trial judge erred in (1) excluding testimony of an expert witness; and (2) denying his postverdict motion for a voir dire of a juror to determine whether the jury were subject to extraneous influences or whether the juror was biased against the defendant. We conclude that the judge properly exercised her discretion in excluding the testimony of the expert witness; however, the judge should have allowed the defendant's motion for a voir dire of the juror to the extent indicated herein.

1. *Background.* We summarize the relevant facts and trial testimony, reserving other facts for discussion as they become pertinent to the issues raised. In September, 1997, the victim, who was then about twenty-six years old, ended her romantic relationship with the thirty-three year old defendant. Two months later, the defendant drove to the victim's apartment hoping to retrieve some of his belongings and to persuade her to resume their relationship. The victim asked the defendant to leave, but he stayed and continued to pursue a discussion regarding their relationship.

When the defendant arrived at the victim's apartment building, she was going to the basement to do laundry. He followed her, saying he wanted to discuss getting back together. He then followed her upstairs. When the victim entered her apartment, the defendant stepped inside as well. According to the victim, she asked the defendant to leave and moved to close the door, but the defendant blocked the door from closing, stepped fully inside, and shut the door behind him. The victim told the defendant she would telephone the police if he did not leave, and she reached for the telephone. The defendant grabbed the victim and took the telephone from her. The victim testified that the defendant

---

[1]He was acquitted of breaking and entering in the daytime. His conviction of assault and battery by means of a dangerous weapon was placed on file with the defendant's consent and is not before us on appeal. See *Commonwealth* v. *Dahl,* 430 Mass. 813, 814 n.1 (2000).

threatened to kill her if the police came to her apartment.

During the next several hours, the defendant repeatedly told the victim that he could not live without her. He stated that he would not hurt her, but wanted her to watch him die. Both the victim and the defendant cried throughout the incident.

At one point, the defendant ran a chisel across his wrists and abdomen, but did not cut himself. He later found a large kitchen knife and a paring knife. The defendant twice leaned over the victim and balanced the kitchen knife between their bodies, with the handle of the knife resting on the victim's abdomen and the point of the knife against the defendant's abdomen. The defendant used his arms to hold himself up and told the victim that he was going to fall on top of the knife. The victim cried and tried to hold the defendant up; eventually, the defendant moved away. At various times, the defendant ran the kitchen knife and the paring knife over parts of his body and used one of the knives to cut his forearm and wrist.

According to the victim, the defendant placed the large kitchen knife against her neck and threatened to kill her if she did not "participate" in sexual intercourse. Following the intercourse, the defendant got dressed, cleaned up his blood that had dripped on the floor, and left. Once the defendant was gone, the victim dialed 911.

The defendant denied threatening the victim. He insisted that the only person he intended to hurt was himself. He testified that when he asked the victim to have intercourse with him, she answered, "Just please don't hurt yourself anymore."

2. *Exclusion of physician testimony.* During trial, the defendant proffered testimony of an emergency room physician to state that the defendant's self-inflicted wounds indicated a serious attempt at suicide. The defendant maintains that this evidence would support his testimony that his "sole intent" in going to the victim's apartment was to commit suicide and that the victim agreed to have intercourse with him to prevent him from killing himself. The trial judge excluded the testimony for lack of relevance. She assumed that the physician was fully qualified, that he would testify that the nature of the defendant's wounds indicated a suicide attempt in the most serious category,

and that his testimony would support an inference that *"one* of the things in the defendant's mind was a genuine intention to kill himself at the time that he made that particular wound" (emphasis supplied). The judge, however, ruled that the evidence was irrelevant· because it had "no bearing on what else may have been in the defendant's mind" (e.g., a genuine suicide attempt is not incompatible with rape) and had "no bearing on whether the alleged victim was genuinely in fear as to her own safety and for that reason submitted" to having intercourse with the defendant. The defendant asserts that this ruling was erroneous.

"Evidence is relevant if it has a rational tendency to prove a material issue." *Commonwealth* v. *Smiley*, 431 Mass. 477, 484 (2000), quoting *Commonwealth* v. *Valentin*, 420 Mass. 263, 270 (1995). It must not be "too remote or speculative." *Commonwealth* v. *Pina*, 430 Mass. 66, 77 (1999), quoting *Commonwealth* v. *Rosa*, 422 Mass. 18, 22 (1996). These "questions are within the sound discretion of the judge," *Commonwealth* v. *Martinez*, 431 Mass. 168, 174 (2000), quoting *Commonwealth* v. *Valentin*, *supra*, and we will accept the judge's determination "absent palpable error." *Commonwealth* v. *Graham*, 431 Mass. 282, 288, cert. denied, 531 U.S. 1020 (2000), quoting *Commonwealth* v. *Marrero*, 427 Mass. 65, 67-68 (1998); *Commonwealth* v. *McLaughlin*, 431 Mass. 241, 248 (2000).

"The essence of the crime of rape, whether aggravated or unaggravated, is sexual intercourse with another compelled by force and against the victim's will or compelled by threat of bodily injury." *Commonwealth* v. *Sherry*, 386 Mass. 682, 687 (1982), citing G. L. c. 265, § 22 (*a*) & (*b*). See *Commonwealth* v. *Lopez*, 433 Mass. 722, 726-729 (2001); *Commonwealth* v. *Caracciola*, 409 Mass. 648, 651 (1991); *Commonwealth* v. *Helfant*, 398 Mass. 214, 220 (1986). The judge acted within her discretion when she excluded the defendant's proffered witness. The physician's testimony could support only the defendant's claim that he intended to kill himself.[2] Such evidence is irrelevant in a rape case where the issue is whether the victim consented. The defendant may have intended to commit suicide

---

[2]The defendant's trial counsel conceded that the physician could not testify as to whether the defendant's wounds indicated that the defendant only

*and at the same time* intended to harm the victim or engender fear in the victim that he would harm her.[3]

Moreover, to prove a charge of rape against the defendant, the Commonwealth need not prove "either that the defendant intended the sexual intercourse be without consent or that he had actual knowledge of the victim's lack of consent." *Commonwealth* v. *Cordeiro*, 401 Mass. 843, 851 n.11 (1988), and cases cited. See *Commonwealth* v. *Ascolillo*, 405 Mass. 456, 463 (1989) (Commonwealth need not prove defendant did not act pursuant to honest and reasonable belief that victim consented). It is sufficient that the Commonwealth prove that the victim reasonably feared that the defendant would harm her if she did not submit. See, e.g., *Commonwealth* v. *Caracciola*, *supra*; *Commonwealth* v. *Therrien*, 383 Mass. 529, 538-539 (1981), and cases cited. As the judge stated, that the defendant actually intended to kill himself has no bearing on whether the victim feared bodily injury to herself or whether her fear was reasonable. Accordingly, the defendant's expert witness could contribute nothing to this issue, and the judge properly excluded his testimony.

3. *Motion for voir dire of juror.* Following the jury verdicts, defense counsel learned that, during trial, one of the jurors had posted a message on an internet mail service,[4] stating that she was "stuck in a 7 day-long Jury Duty rape/assault case . . . missing important time in the gym, working more hours and getting less pay because of it! Just say he's guilty and lets [*sic*]

---

intended to commit suicide or whether he intended something in addition to suicide.

Further, the defendant's claim that he intended to kill himself does not appear to be in dispute. The victim testified that she begged the defendant not to hurt himself and never suggested that she believed the defendant's suicide attempts or threats were false. The defendant's testimony also indicates that he perceived the victim to be truly concerned that he would hurt himself.

[3]The defendant's testimony contradicts his contention that his *only* intent was to kill himself. He testified that his intention in going to the victim's apartment was to "try to make her change her mind [about their failed relationship] and get some stuff back."

[4]"Listserv," the service the juror used, is described as a "small program that automatically redistributes e-mail to names on a mailing list. Users can subscribe to a mailing list by sending an e-mail note to a mailing list they learn about; listserv will automatically add the name and distribute future e-mail postings to every subscriber."

get on with our lives!'' According to the defendant, approximately 900 people subscribe to this mailing list and would have received the juror's message. At the time this message was posted, the Commonwealth had presented three of its six witnesses.

The juror received at least two responses to her message. After posting her first message, the juror sent a second one stating, "Please understand I was joking . . . and do not take my quote 'Just call him guilty so I can get back in the gym' (or something like that) seriously . . . I should really watch it next time, I got a 2 page letter from 'Ann' because she took me toooooo seriously." Apparently, a subscriber named "Ann" sent the juror a private e-mail message after reading the juror's first message.[5] The next day an attorney, who also subscribed to the mailing list and read both messages posted by the juror, sent the juror an e-mail message warning her about the impropriety of her actions and advising her to notify the judge about the messages she had posted.[6,7]

The defendant filed a motion for a postverdict voir dire of the juror to determine whether the juror was in fact the woman who posted the e-mail message and, if so, whether she "conveyed this or any similar sentiment to the other members of the jury, either before or during the deliberations." The judge denied the defendant's motion. She ruled that the evidence did not show that the juror who sent the message, or any other juror, was subject to an extraneous influence, because, she stated, there was no evidence that anyone communicated to the juror about the case. The judge also ruled that the evidence did not indicate that the juror held any bias against the defendant. According to the judge, the juror's "e-mail does not indicate that the juror's view as of that time was irrevocable, or that she could not or would not fairly consider what would be presented during the rest of the trial."

---

[5]The defendant does not know the contents of this message from "Ann."

[6]It is through this attorney that defense counsel learned about the juror's e-mail messages. The attorney, who worked at the Legal Aid Society of New York, sent a letter to the Committee for Public Counsel Services in Boston explaining what had happened and attached copies of the juror's two messages and the attorney's response to the juror.

[7]The juror did not notify the judge about the e-mail messages.

The issue here is whether the juror's conduct deprived the defendant of his right to a fair trial. The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights guarantee a criminal defendant the right to a trial by an impartial jury. See *Commonwealth* v. *Vann Long*, 419 Mass. 798, 802 (1995), and cases cited.[8] The presence of even one partial juror violates this right. See *id.*

The defendant argues that a voir dire of the juror was necessary to ensure that he received a fair trial. A trial judge has broad discretion in determining whether a postverdict inquiry of a juror is warranted and is under no duty to conduct such an inquiry unless the defendant makes a "colorable showing" that extraneous matters may have affected a juror's impartiality. *Commonwealth* v. *Dixon*, 395 Mass. 149, 151-152 (1985), and cases cited. In support of his motion, the defendant offered an affidavit signed by his trial counsel providing a specific account of the juror's e-mail messages and their contents. The defendant contends that the juror's communications about his case on the internet as well as any responses that she may have received constitute extraneous matters that could have influenced her or other jury members.

An extraneous matter is one that involves information not part of the evidence at trial "and raises a serious question of possible prejudice." *Commonwealth* v. *Kater*, 432 Mass. 404, 414 (2000). See, e.g., *Commonwealth* v. *Cuffie*, 414 Mass. 632, 635 (1993) (juror made unauthorized visit to scene of crime); *Commonwealth* v. *Dixon, supra* at 150 (juror's husband conversed with trial witnesses and relayed substance of conversations to juror during trial); *Commonwealth* v. *Fidler*, 377 Mass. 192, 194 (1979) (during deliberations juror stated that defendant had been shot at one month earlier, information not presented at trial). A juror comment regarding the strength of the evidence or his or her opinion of the defendant's guilt, however, is not an extraneous matter. See *id.* at 199 (juror

[8]Article 29 of the Massachusetts Declaration of Rights also guarantees "the right of every citizen to be tried by judges as free, impartial and independent as the lot of humanity will admit." The term "judges" has been construed to include jurors. See *Commonwealth* v. *Vann Long*, 419 Mass. 798, 802 n.3 (1995), citing *Hall* v. *Thayer*, 105 Mass. 219, 223 (1870).

remark about people who "run around with guns" not extraneous). "We cannot expunge from jury deliberations the subjective opinions of jurors, their attitudinal expositions, or their philosophies." *Id.*, quoting *Government of the V.I.* v. *Gereau*, 523 F.2d 140, 148 (3d Cir. 1975), cert. denied, 424 U.S. 917 (1976).

In this case, the juror's statement, "Just say he's guilty and lets [*sic*] get on with our lives," does not involve an extraneous matter. See *Commonwealth* v. *Mahoney*, 406 Mass. 843, 855-856 (1990); *Commonwealth* v. *Fidler, supra* at 199; *Commonwealth* v. *Scanlan*, 9 Mass. App. Ct. 173, 183-184 (1980), and cases cited. Rather, it reflects the juror's subjective view of the defendant's guilt at that time. While such a comment was improper and violated the judge's order not to communicate about the case, it alone cannot be used to impeach the jury's verdicts.[9] See *Commonwealth* v. *Fidler, supra* at 198-199.

The juror, however, may have received *responses* to her e-mail postings. The defendant established that the juror apparently received at least two e-mails in return, one from "Ann" and one from the attorney in New York.[10] We do not know whether the juror received any information regarding the

---

[9]The juror's statement in this case closely resembles a comment made by a juror in *Commonwealth* v. *Scanlan*, 9 Mass. App. Ct. 173 (1980). During trial, a juror in the *Scanlan* case asked, "Why doesn't [the defendant] just get up and plead guilty and save us all the time and money?" *Id.* at 183. The Appeals Court properly concluded that, while this comment was undesirable, it was not an extraneous matter. See *id.* "In the interior workings of a jury there is room for impropriety that is short of unlawfulness." *Id.* at 184.

[10]The defendant obtained a copy of the e-mail sent by the attorney in New York but apparently does not have copies of any other e-mails that the juror may have received, including the e-mail from "Ann," the person referenced in the juror's second message. Defense counsel could have conducted a preliminary investigation, perhaps by sending an e-mail through the attorney in New York, asking whether any other subscribers to the mailing list sent the juror e-mails in response to the juror's two messages and, if so, what the contents of those responses were. See *Commonwealth* v. *Dixon*, 395 Mass. 149, 153 (1985). We recognize, however, that defense counsel is in a "sensitive position," *id.*, as counsel is barred from independently contacting jurors or conducting unsupervised interviews with jurors after the verdicts are rendered. *Commonwealth* v. *Fidler*, 377 Mass. 192, 202 (1979) ("We decline to permit unrestricted posttrial interviews, as we think such a practice would defeat the important interests protected by restrictions on the use of juror testimony to impeach verdicts").

defendant's case in response to her e-mail postings, but due to the large number of persons who would have received the juror's messages and could have responded, the juror left herself vulnerable to receiving information about the case at issue prior to the rendering of the verdicts. As such, she may have been exposed to external influences.

"Where a case is close, as here, a judge should exercise discretion in favor of conducting a judicial inquiry." *Commonwealth* v. *Dixon, supra* at 153. Accordingly, the judge should have allowed the defendant's motion. We remand the case for the judge to conduct a voir dire limited to determining the following: whether the juror was in fact the woman who posted the two e-mail messages; if so, whether she received any responses; the contents of any such responses; and whether the juror communicated the substance of any such responses to other jury members prior to or during deliberations.

The defendant bears the burden of showing that the juror was in fact exposed to extraneous matters. He may rely on the juror's testimony during the voir dire to satisfy this burden. *Commonwealth* v. *Fidler, supra* at 201. If the defendant makes such a showing, as determined by the judge, the burden shifts to the Commonwealth to demonstrate "beyond a reasonable doubt" that the defendant was not prejudiced by the extraneous matters. *Id.* "The judge may not receive any evidence concerning the actual effect of the matter on the juror's decision . . . [but] must focus on the probable effect of the extraneous facts on a hypothetical average jury." *Id.*

The defendant also argues that the judge erred in failing to inquire whether the juror harbored an impermissible bias against him. He asserts that bias is implicit in the juror's statement, "Just say he's guilty and lets [*sic*] get on with our lives!" Although juror bias is not an extraneous matter, a postverdict inquiry may be appropriate where there is evidence of bias in order to ensure that the defendant received a fair trial. See *Commonwealth* v. *Laguer*, 410 Mass. 89, 97 (1991); *Commonwealth* v. *Amirault*, 399 Mass. 617, 625 (1987); *Commonwealth* v. *Grant*, 391 Mass. 645, 653 (1984).

However, the defendant has not made the requisite showing of juror bias to warrant a postverdict inquiry. See *Com-*

monwealth v. *Amirault, supra* (postverdict hearing required if defendant raises "reasonable claim" of juror bias). The juror's e-mail may have been only a joke.[11] At most, it expresses her distaste for the trial process, in particular its length, and her subjective perception of the defendant's guilt at that time. Her statement, "Just say he's guilty," is phrased generally and does not target a characteristic, trait, or quality specific to the defendant. Cf. *Commonwealth* v. *Laguer, supra* at 94-95 (racist comments); *Commonwealth* v. *Grant, supra* at 652-653 (juror in rape trial failed to disclose that her daughter had been raped); *Commonwealth* v. *Delp*, 41 Mass. App. Ct. 435, 436-437 (1996) (juror stated he was influenced by his belief that defendant was homosexual). Her comment in no way indicates that she held an impermissible bias against this defendant. See, e.g., *Commonwealth* v. *Luna*, 418 Mass. 749, 754 (1994) (juror statement during deliberations that he was prejudiced against law enforcement officers and thought they should never lie not evidence of bias).

Jurors inevitably formulate impressions as they hear evidence. This is natural and cannot be prevented. Indeed, it would be inhuman not to do so. The very structure of the trial acknowledges that jurors develop opinions as the trial progresses, which is why the party with the burden of proof is the first to make an opening statement and the last to make a closing statement. The question is whether jurors can suspend final judgment and keep their minds open to other evidence that they hear. While it was improper for the juror to express her opinion during the trial, her statement does not suggest that her mind was closed or that she was influenced by personal feelings or prejudice against this particular defendant. In fact, the defendant was acquitted of one of the charges.[12] See *Commonwealth* v. *Scanlan, supra* at 184 ("it is fair to comment that the defendant was acquitted on [some of the] indictments against him and that, apparently, although the mouths of some of the jurors may have been too open, their minds were not shut").

---

[11]In her second e-mail, she wrote, "Please understand I was joking . . . and do not take my quote 'Just call him guilty so I can get back in the gym' (or something like that) seriously."

[12]See note 1, *supra.*

The order denying the defendant's motion for a voir dire of the juror is reversed, and the cases are remanded to the Superior Court for a hearing in accordance with this opinion.

*So ordered.*