COMMONWEALTH *vs.* DARNYEL PHILYAW.

No. 99-P-2121.

Suffolk. January 9, 2002. - September 6, 2002.

Present: LAURENCE, DREBEN, & TRAINOR, JJ.

*Evidence,* Relevancy and materiality, Identification. *Identification. Practice, Criminal,* Continuance, Jury and jurors, Deliberation of jury, New trial. *Jury and Jurors.*

There was no merit to a criminal defendant's claim of error in the admission of evidence at trial suggesting that he was a member of a gang, where the evidence was relevant to explaining why the police followed the automobile in which the defendant was a passenger, and where the evidence supported the identification of the defendant by the police, an issue crucial to the trial. [732-733]

At a criminal trial, the judge did not err in denying the defendant's motion for a continuance on the day of trial, where the defendant, who sought the continuance to obtain the testimony of medical witnesses, presented the judge only with the bare allegation of necessity for the continuance and did not proffer even a general representation and description of the testimony to be offered, and where the relatively simple case had been pending for some time. [733-735]

A Superior Court judge erred in denying a criminal defendant's motion for an evidentiary hearing on the question of juror misconduct, where the affidavits in support of the motion raised a sufficient suggestion that there were extraneous matters in the jury's deliberations; this court remanded the case for the purpose of conducting a hearing. [735-740]

INDICTMENT found and returned in the Superior Court Department on August 27, 1996.

The case was tried before *Robert W. Banks*, J., and motions for a new trial and for an evidentiary hearing were considered by *Charles T. Spurlock*, J.

*Elizabeth Lutwak* for the defendant.

*Joseph M. Ditkoff*, Assistant District Attorney, for the Commonwealth.

DREBEN, J. At trial, three Boston police officers identified the

defendant as the front-seat passenger in a car they had followed in August, 1996. After a high speed chase, the front-seat passenger bolted from the car and threw a gun, subsequently retrieved by police, into some bushes. Although the police tried to follow the passenger, he disappeared after leaping over one fence and climbing another. Subsequently apprehended, the defendant was charged with possession of a firearm without a license and receiving a firearm with knowledge that the serial number had been removed.[1] His main defense at trial was misidentification, a contention buttressed by a claim of alibi, testified to by his mother, and by his alleged inability, because of an automobile accident in October, 1995, to navigate the fences in question.

Shortly after his conviction of possession of a firearm without a license, the defendant filed a motion for a new trial, claiming that the jury were subjected to extraneous influences because a juror had visited the area in which the fences were located. Because the affidavit in support of the motion was based on totem-pole hearsay, the motion was denied without prejudice by a judge who was not the trial judge, the latter having retired. After obtaining another affidavit, some two years later, the defendant renewed his motion for a new trial, but the motion and also his request for an evidentiary hearing were denied by a second motion judge.

The defendant appeals from his conviction and from the denial of his motion for a new trial and his motion for an evidentiary hearing on the question of juror misconduct. In his direct appeal, the defendant claims error in the admission of evidence suggesting he was a member of a gang and in the trial judge's refusal to grant a continuance to enable him to obtain expert medical testimony as to his disability. In his appeal from the denial of his motion for a new trial, he claims error in the refusal of the second motion judge to grant an evidentiary hearing or a new trial in light of the affidavit of a coworker of a juror that the defendant contends raised a sufficient "suggestion that there were extraneous matters in the jury's deliberations." *Commonwealth* v. *Fidler,* 377 Mass. 192, 203 (1979). While we find no error in the actions of the trial judge challenged by the

---

[1]The defendant was acquitted of the latter charge.

defendant, we agree that an evidentiary hearing should have been held to determine whether extraneous matters were before the jury and, if so, whether the defendant was prejudiced. See *id.* at 201.

1. *Suggestion of gang membership.* Prior to trial, the prosecutor informed the judge that she intended to ask the police why they had followed the defendant; the anticipated answer was that the defendant "hung out" in an area where "kids" had a problem with "kids" in the Academy Homes project and the car in which the defendant was riding was headed toward Academy Homes. The prosecutor considered the evidence relevant to show that the police had cause to follow the defendant and to support the police identification of the defendant. The judge indicated that he would permit the inquiry, but ruled that no mention of gangs was to be made. The term "gang" was not used at trial.

The defendant objected to the pretrial ruling and objected again at trial when, as expected, police officers repeated and elaborated on the explanation of the prosecutor. They testified that while they were patrolling an area of the Roxbury section of Boston on August 10, 1996, in an unmarked car, they recognized the defendant in the front passenger seat of another car as being a youth from the Columbia Road area, although at the time they had forgotten his name. Asked why they had followed the car, one of the officers explained that the youths from the Columbia Road area were affiliated with the youths from Intervale Street, and that there was "an ongoing feud of the kids from Intervale Street and Academy Homes Housing Development . . . . When I saw the defendant I decided to follow the vehicle since they were heading in the area of the Academy Homes Housing Development."

The defendant, relying on *Commonwealth v. Wolcott,* 28 Mass. App. Ct. 200, 209-211 (1990), claims that here, as in *Wolcott,* the testimony of the police and closing argument "insinuated that the events at issue were motivated by gang relationships without any actual proof of gangs or gang activity." That case is not apposite. As the author of *Wolcott,* Justice Kaplan, pointed out in *Commonwealth v. Wilson,* 46 Mass. App. Ct. 292, 299 (1999), in *Wolcott* — unlike in the

present defendant's (Philyaw's) trial —" 'gangs' were mentioned and dwelt on so as to prey on a jury's anxious fears of unpoliceable violence."

The evidence was relevant. It explained why the police followed the car in which the defendant was a passenger. "[A]n arresting or investigating officer should not be put in the false position of seeming just to have happened upon the scene; he should be allowed some explanation of his presence and conduct." *Commonwealth* v. *Cohen*, 412 Mass. 375, 393 (1992), quoting from McCormick, Evidence § 249, at 734 (3d ed. 1984).[2] Moreover, the evidence supported the identification of the defendant by police, an issue crucial to the trial. That the police immediately decided to follow the defendant and, also, that when they returned to the police station, they were able to identify the defendant from arrays of youths from the Columbia Road area, lent credence to their identification of him as being from the Columbia Road area. See *Commonwealth* v. *Best*, 50 Mass. App. Ct. 722, 727-728 (2001).

> "Evidence is relevant if it has a rational tendency to prove a material issue. Whether evidence is relevant in any particular instance, and whether the probative value of relevant evidence is outweighed by its prejudicial effect, are questions within the sound discretion of the judge. . . . The judge's determination of these questions will be upheld on appeal absent palpable error."

*Commonwealth* v. *Smiley*, 431 Mass. 477, 484 (2000) (citations omitted). There was no error.

2. *Denial of continuance.* Both the docket and the transcript indicate that on May 15, 1998, the case was set for trial for the week of June 8. On June 10, the parties were notified that trial would begin on June 11. In calling the case on June 11, the clerk stated: "Per the request of [counsel for the defendant] the matter was sent to the Regional Administrative Judge on her mo-

---

[2]The defendant claims that the police did not need this explanation because the car they were following subsequently committed a traffic violation by making a turn without signaling. This led to an attempt by the police to pull the car over and, when that failed, to the high speed chase. The traffic violation might explain the police chase but it would not provide evidence of the initial identification of the defendant in the vehicle.

tion to continue. And that motion was denied and the case was referred back to this session for trial." Immediately after the clerk's opening statement, the defendant's counsel again sought a continuance, this time from the trial judge, saying she was "totally unprepared" for trial, that she had only found out the day before that the case was called for trial on June 11 and that "the whole issue in the matter, in fact, is whether or not the defendant was able to run away from the police officers given his medical condition at the time." Also, she had not spoken to the medical witnesses since August. The trial judge denied the motion stating he was unable to allow the motion in view of the denial of the continuance by the regional administrative judge. When the defendant again attempted to renew the motion for continuance after jury empanelment, the judge pointed out that defense counsel's appearance had been filed for two years. Although defense counsel stated that she needed the testimony of a therapist at Roxbury Medical Associates, a therapist at Mattapan and Dorchester Medical Associates, and two doctors, she did not know whether the witnesses were still available, and she did not proffer the content of their testimony.[3]

The defendant makes no claim with respect to the denial of his motion by the regional administrative judge, and the record does not disclose what arguments were made to that judge. We need not consider whether the trial judge was constrained by the decision of the regional administrative judge because, in any event, we view the judge's comment concerning the length of time that counsel had represented the defendant as indicating that if he had been free to act, he would have denied the renewed motion. Treating the decision of the trial judge as a

---

[3]While denying the motion for a continuance, the judge indicated that at the time the defendant needed the witnesses, he would recess the trial overnight. He also ordered the clerk to have the police serve summonses to the defendant's witnesses. It turned out that the subpoena with regard to Roxbury Medical Associates could not be served (defense counsel stated the office had apparently moved), but the therapist's records were brought and admitted in evidence. Also admitted was a letter from Roxbury Medical Associates to the attorney representing the defendant in the matter of his automobile accident, which stated that it was a "final medical report." The physicians could not be served. The therapist at Mattapan and Dorchester Medical Associates, the defendant's mother, and his probation officer testified concerning the accident and the defendant's physical condition.

discretionary one, as does the defendant, we decline to overturn it, as a judge's action in the matter of a continuance "will not be disturbed unless there is a patent abuse of discretion," that is, unless the decision "is shown to be arbitrary." *Commonwealth* v. *Bryer*, 398 Mass. 9, 15 (1986). Continuances are to be granted "only when necessary to prevent injustice." *Commonwealth* v. *Taylor*, 428 Mass. 623, 627 (1999). See Mass.R. Crim.P. 10(a)(1), (2), 378 Mass. 861 (1979).

> "In considering a request for a continuance, a trial judge should balance the movant's need for additional time against the possible inconvenience, increased costs, and prejudice which may be incurred by the opposing party if the motion is granted . . . [and] also give due weight to the interest of the judicial system in avoiding delays which would not measurably contribute to the resolution of a particular controversy."

*Commonwealth* v. *Gilchrest*, 364 Mass. 272, 276-277 (1973). *Commonwealth* v. *Bryer*, 398 Mass. at 15.

Here, the defendant presented the judge "only with the bare allegation of necessity" and did not proffer even "a general representation and description of the testimony to be offered," a proffer held inadequate in *Bryer, supra*. The availability of the witnesses was even much in question.[4] This "relatively simple case had been pending for some time," see *Commonwealth* v. *Bryer, supra* at 15, there had been numerous continuances, and counsel had not been diligent in obtaining witnesses, see Mass. R.Crim.P. 10(a)(2)(C). There was no error in the denial of the motion for a continuance on the day of trial.

3. *Juror misconduct.* On August 13, 1998, at a nonevidentiary hearing on the defendant's first motion for a new trial, he presented an affidavit from his mother stating that approximately two days after his sentencing,[5] she received a telephone call from a friend, Clarence Harrell. He informed her that he had

---

[4]Not only was there no showing of prejudice to the trial judge, but in the absence of an offer of proof as to the testimony of the witnesses and in view of the evidence that was admitted as to the defendant's injuries, see note 3, *supra*, there is also no showing of prejudice on this appeal. See *Commonwealth* v. *Shea*, 38 Mass. App. Ct. 7, 9-10 (1995).

[5]The defendant was sentenced on June 15, 1998.

had a conversation with a fellow employee at the Gillette Corporation, who, it turned out, had been a juror in the defendant's case. The mother's affidavit averred that Harrell had asked the juror, "Why did you send an innocent kid to jail?" After discussing the case at some length, the juror concluded by saying, "We couldn't come to a decision, so the rest of the jurors sent one juror to take a view of the scene of the crime," and his observations were shared with the rest of the jurors.

At the hearing on the defendant's first motion for a new trial, the prosecutor argued that the affidavit of the mother was insufficient, saying, "I think we need an affidavit from the individual who spoke directly to the juror . . . ." The judge concurred and denied without prejudice the defendant's request for an evidentiary hearing. When asked by defense counsel whether she would take a different view if Harrell's affidavit were obtained, the judge answered: "It seems to me that that's the person." The judge added, "You can't talk to the juror."

New counsel procured Harrell's affidavit, which was dated October 3, 2000.[6] The affidavit stated:

> "I work at the Gillette Company in South Boston. In June of 1998, I spoke with [an identified person], a co-worker of mine at Gillette. She told me that she had been a juror in the trial of Darnyel Philyaw.
>
> "She stated that during the trial two men serving on the jury had gone to the scene of the chase described in the trial to look at the fence. The men reported back to the jury that it was possible for the defendant to jump over the fence because they had looked at the area. [The identified person] no longer works at Gillette."[7]

With Harrell's affidavit in hand, and relying on *Commonwealth* v. *Fidler*, 377 Mass. 192, 201-204 (1979), the defendant's new counsel filed a motion for an evidentiary hearing and an amended motion for a new trial. The motions were

---

[6]The docket indicates that earlier the defendant had unsuccessfully sought funds for an investigator.

[7]The record shows that the person named by Harrell was a deliberating juror at the defendant's trial, and her jury questionnaire indicates she worked at Gillette at the time of trial.

denied by a second motion judge without a hearing and without explanation. While the decision to grant an evidentiary hearing is a discretionary one, see *Commonwealth* v. *Dixon*, 395 Mass. 149, 151 (1985) (trial judge has broad discretion); *Commonwealth* v. *Healy*, 393 Mass. 367, 391 (1984) (motion judge who is not the trial judge has discretion), the relevant factors determining whether a hearing should be held are the seriousness of the issue and the adequacy of the showing on the issue. See *Commonwealth* v. *Stewart*, 383 Mass. 253, 257-258 (1981).

The seriousness of the alleged misconduct is unquestionable. "Litigants are entitled to a decision on the evidence at trial, governed by the rules of evidence," *Commonwealth* v. *Fidler*, 377 Mass. at 197, and, "[w]hile the jury may leaven its deliberations with its wisdom and experience, in doing so it must not bring extra *facts* into the jury room" (emphasis in original). *United States* v. *McKinney*, 429 F.2d 1019, 1023 (5th Cir.), modified on rehearing, 434 F.2d 831 (1970), cert. denied, 401 U.S. 922 (1971). *Commonwealth* v. *Hunt*, 392 Mass. 28, 40 (1984). Under our cases the taking of an unauthorized view by one or more jurors has long been considered an extraneous matter, *Harrington* v. *Worcester, Leicester, & Spencer St. Ry.*, 157 Mass. 579, 581-583 (1893), and one which is of a "very serious" nature. *Markee* v. *Biasetti*, 410 Mass. 785, 788 (1991). See *Commonwealth* v. *Cuffie*, 414 Mass. 632, 637 (1993) ("potentially serious"); *Commonwealth* v. *Coles*, 44 Mass. App. Ct. 463, 468 (1998) ("potentially serious").

The showing that is required in these cases appears to be that expressed in *Commonwealth* v. *Dixon*, 395 Mass. at 151-152: "The party seeking judicial investigation must make a *colorable showing* that an extrinsic influence may have had an impact upon the jury's impartiality" (emphasis supplied). *Commonwealth* v. *Guisti*, 434 Mass. 245, 251 (2001), sets forth the same standard. "In other words, there must be something more than mere speculation." *Commonwealth* v. *Dixon*, 395 Mass. at 152. "Postverdict interview[s] should be initiated only if the court finds some suggestion that there were extraneous matters

in the jury's deliberations." *Commonwealth* v. *Fidler*, 377 Mass. at 203.[8]

The defendant has, in our view, made such a showing under our cases, and we note that, in the cases cited to us or those we have found, an evidentiary hearing was either held or required (or a new trial ordered) where, postconviction, the alleged extraneous matter first brought to attention was that one or more jurors had taken a view prior to verdict.[9]

The Commonwealth's arguments that the defendant's showing was inadequate are unpersuasive. It claims, inter alia, not only that Harrell's affidavit is double hearsay, but also that our cases require direct communications from jurors before permitting juror questioning. There is no such requirement. See *Commonwealth* v. *Guisti*, 434 Mass. at 250 & n.6, 253 (New York attorney who had seen juror's e-mail messages sent a letter to Committee for Public Counsel Services informing of the misconduct); *United States* v. *Rhodes*, 556 F.2d 599, 601-602 (1st Cir. 1977) (affidavit of a reporter who had attended trial stating that he had seen what appeared to be a newspaper under the arm of a juror and, after the trial, several jurors had told him that the jury had discussed earlier publicity concerning the defendants' State prosecution).

Moreover, the policy behind the reluctance to question jurors has no application to first questioning Harrell. See *United States* v. *Rhodes*, 556 F.2d at 602. In view of the first motion judge's admonition not to talk to any juror, counsel for the defendant, who had "without solicitation obtain[ed] information suggesting that 'extraneous matters' were brought into the jury delibera-

---

[8]In *Commonwealth* v. *Cuffie*, 414 Mass. at 636, the court, in reversing the judgment and ordering a new trial, noted that the judge had before him "significant" or "considerable" indication that extraneous matter had infected the jury's deliberations. However, in that case, the trial judge had already, without the presence of counsel, interviewed juror A, who had told the judge that juror B had said she had visited the scene. *Id.* at 635. The question in *Cuffie* was whether juror B should have been interviewed as requested by counsel. The *Cuffie* court held that juror B should have been interviewed and in the presence of counsel. *Id.* at 635-637.

[9]See *Harrington* v. *Worcester, Leicester, & Spencer St. Ry.*, 157 Mass. at 583; *Markee* v. *Biasetti*, 410 Mass. at 787-789; *Commonwealth* v. *Cuffie*, 414 Mass. at 635-638; *Commonwealth* v. *Jones*, 15 Mass. App. Ct. 692, 694 (1983); *Commonwealth* v. *Coles*, 44 Mass. App. Ct. at 467-468.

tions," *Commonwealth* v. *Fidler*, 377 Mass. at 203, could not investigate further. Compare *ibid.* While not conclusive, we also note that, at the hearing before the first motion judge, both the judge *and the prosecutor* thought that an appropriate affidavit from Harrell, although hearsay, would be a sufficient basis for an evidentiary hearing. "Where a verdict [may be] the product of misconduct based on extraneous matter, an inflexible rule that bars the best evidence of that misconduct does not serve the interests of providing a fair and just trial for litigants." *Fidler*, 377 Mass. at 197 (albeit speaking about evidence from jurors). See *Wright* v. *Abbott*, 160 Mass. 395, 397-398 (1894), where a deputy sheriff who had charge of a jury was permitted to testify as to what he heard was said and done by the jury (they had decided the case by lot), the court stating, at 398:

> "If, on grounds of public policy, the affidavits or the testimony of jurors concerning what took place in the jury room is excluded, as well as evidence of their subsequent declarations on the subject, still we are of opinion that independent evidence should be admitted, and that the consequences to be apprehended from admitting such evidence are less harmful than the consequences of forbidding all inquiry into such a matter."

The Commonwealth's other contentions are also unconvincing. That Harrell was a friend of the defendant's mother, that he seemed reluctant or at least dilatory in providing an affidavit, or that the affidavit differed somewhat from the mother's affidavit in that two jurors, rather than one, took a view is not reason to dismiss the affidavit out of hand where such a serious and specific intrusion of extraneous matter is claimed. In contrast to the claims in *Commonwealth* v. *Drumgold*, 423 Mass. 230, 261 (1996), or *Commonwealth* v. *McQuade*, 46 Mass. App. Ct. 827, 833-834 (1999), the misconduct here is not vague or general; the affidavit avers that "specific facts not mentioned at trial concerning . . . the matter in litigation were brought to the attention of the deliberating jury . . . ." *Commonwealth* v. *Fidler*, 377 Mass. at 200. Contrary to the Commonwealth's contention, the nature of the fences was most relevant in determining whether the defendant could scale them in view of his medical condition after his

automobile accident. See *Commonwealth* v. *Cuffie,* 414 Mass. at 637 n.6.

In sum, the motion judge's "denial of the motion without conducting any investigation, not even questioning [Harrell], let alone the jurors, was an . . . insufficient response to the serious matters raised by the allegations of the affidavit." *United States* v. *Rhodes,* 556 F.2d at 602. The order denying the defendant's motion for a new trial is vacated, and the case is remanded to the Superior Court for the purpose of conducting an evidentiary hearing. As prescribed by *Fidler,* 377 Mass. at 201, at the hearing the defendant bears the burden of demonstrating that the jury were in fact exposed to the extraneous matter. The judge in his or her discretion may decide first to hear Harrell, or to conduct an inquiry including one or more jurors. If the judge finds that the extraneous matter was introduced, the burden then shifts to the Commonwealth to show beyond a reasonable doubt that the defendant was not prejudiced by the extraneous matter. If the findings at the evidentiary hearing indicate that the jury were exposed to extraneous matter and the Commonwealth does not meet its burden, the defendant shall be entitled to a new trial. Otherwise, the motion for a new trial should be denied.

*So ordered.*