NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

12-P-1634                                            Appeals Court

COMMONWEALTH  vs.  THOMAS MURPHY.

No. 12-P-1634.

Middlesex.      October 9, 2013.  -  August 12, 2014.

Present:  Cypher, Katzmann, & Maldonado, JJ.

Practice, Criminal, Jury and jurors, Voir dire, Required
     finding.  Constitutional Law, Impartial tribunal, Jury.
     Jury and Jurors.  Breaking and Entering.

Indictments found and returned in the Superior Court
Department on June 30, 2009.

The cases were tried before S. Jane Haggerty, J.

Kenneth I. Seiger for the defendant.
Kimberly Rugo, Assistant District Attorney, for the
Commonwealth.

KATZMANN, J.  The primary issue in this appeal arises from

the denial of the defendant's request for a postverdict hearing

regarding the potential partiality of a juror.  The defendant

was convicted by a jury of four counts of breaking and entering,

three counts of larceny, and three counts of malicious

destruction of property emerging from incidents at four gas stations.  Shortly after the jury trial, the prosecutor reported to the Superior Court judge that, after the verdict, a juror spoke to the proprietor of one of those gas stations -- Welch's Automotive in Littleton -- who was also a witness at trial.  The trial judge denied the defendant's request for a postverdict evidentiary inquiry.  The defendant appeals, seeking such a hearing on remand, and further claiming that there was insufficient evidence to support the conviction of breaking and entering at Welch's Automotive.  We affirm.

Background.  Between September, 2007, and May, 2008, a spate of break-ins occurred at gas stations in the adjacent towns of Littleton, Boxborough, and Westford, and the nearby town of Concord.[1]  On September 18, 2007, the incident that is the heart of this case occurred.  An alarm at Welch's Automotive Services (Welch's), a gas station and garage in Littleton, automatically notified the Littleton Police Department.  When Sergeant Robert Raffalo arrived at Welch's, he investigated together with the owner of the gas station, Mark Shapiro, who was notified as well.  They discovered that a ground-level panel

---

[1] The defendant was indicted for six counts of breaking and entering:  at Welch's Automotive Gulf Station in Littleton, on September 18, 2007; Pump and Pantry Sunoco in Concord, on September 18, 2007; Burke Exxon in Boxborough, on September 20, 2007 and April 10, 2008; at Concord Gas in Concord, on April 10, 2008; at Rapid Refill in Westford, on May 25, 2008.

from one of the garage doors appeared to have been kicked in and was lying on the ground.  There was a footprint on the panel with a distinctive pattern on it, which investigators later matched to the sneakers of the defendant.  No other property was taken or damaged.[2]  A jury convicted the defendant of breaking and entering.[3]

We briefly summarize the facts of the additional incidents because of their relevance to the defendant's sufficiency of the evidence claim with respect to the Welch's conviction.  Later that same evening, a break-in occurred at Concord Pump and Pantry, a gas station and convenience store in Concord, and money and cigarettes were stolen.  The incident was captured on a surveillance video, through which the defendant was identified.  Approximately twenty-four hours later, the pattern continued at Burke Exxon in Boxborough; this incident was also captured on video.  On April 10, 2008, the incidents resumed, with evidence of a second incident at Burke Exxon in Boxborough and an incident at Concord Gas in Concord.  At Concord Gas, a lower panel of a garage door was kicked in -- as at Welch's -- with a similar footprint on the panel.  Finally, on May 25, 2008, at Rapid Refill in Westford, a video surveillance system

---

[2] No money was in the cash register that evening.

[3] The jury acquitted the defendant of malicious destruction of property over $250.

captured two people throwing a rock through the front door, entering the building, and taking cash and other items.

On October 21, 2010, the jury returned its verdicts with respect to each gas station incident.[4]  A jury-waived trial on the sentencing enhancement portions of each indictment was scheduled for the following Wednesday, October 27. Immediately before the trial was scheduled to begin, the prosecutor reported that she had spoken to the owners of the businesses that were the victims of the break-ins, as well as witnesses that testified at trial, to inform them of the outcome of the trial. The following exchange between the prosecutor and the court ensued:

| | |
|---|---|
| The prosecutor: | "[Shapiro, the owner of Welch's and the first witness] also told me that a juror had come to Welch's Automotive on Friday after the trial; that the trial had ended and that this juror had told him the outcome of the trial and that the juror apparently disclosed to him that he had in the past been a customer of Welch's Automotive.  This juror was from Westford."[5] |
| The court: | "The juror said?" |
| The prosecutor: | "That he in the past had been a customer of Welch's Automotive." |

---

[4] The defendant was convicted on all indictments with respect to these additional incidents, except for the April 10, 2008, incidents in Boxborough and Concord.

[5] We take judicial notice of the fact that the town of Westford is adjacent to the town of Littleton.

| | |
|---|---|
| The court: | "Okay." |
| The prosecutor: | "Mr. Shapiro did not recognize this juror in any way.  Mr. Shapiro just expressed to me surprise because he thought anyone who knew anybody or was familiar with any location in the trial was automatically excused.  I explained to him the impanelment process, that people are questioned about whether or not their impartiality is affected by any such means." |
| The court: | "Did Mr. Shapiro even recognize the juror?" |
| The prosecutor: | "He did not at all." |
| The court: | "Oh, okay." |
| The prosecutor: | "He did not at all.  He did not recognize him as a previous customer at all." |

The encounter between Shapiro and the juror had occurred October 22, the Friday before it was reported to the court by the prosecutor and the day after the conclusion of the jury trial. The prosecutor said that she reported the encounter "[i]n an abundance of caution," but argued that no further inquiry was necessary.  Defense counsel argued to the contrary that, "in an abundance of caution, it would probably be wise for the [c]ourt to have Mr. Shapiro and the juror come in and to question them to flesh this out."  Defense counsel questioned the candor of the juror in answering voir dire questions.  The court noted that the names of the particular businesses were not mentioned

during the voir dire. Over defense counsel's objection, the judge determined that no additional inquiry was necessary.

Discussion. On appeal, the defendant contends that the trial judge erred in not conducting a postverdict evidentiary hearing regarding improper extraneous influence and juror bias.[6] We disagree.

This appeal implicates two principles. On the one hand, the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights guarantee criminal defendants the right to a trial by an impartial jury. See Commonwealth v. Bresnahan, 462 Mass. 761, 770 (2012). See also Commonwealth v. Guisti, 434 Mass. 245, 251 (2001). "[E]ven one partial juror violates this right." Ibid. On the other hand, well-established precedent recognizes "the finality of jury verdicts and protection of jurors from unwelcome solicitation or harassment by litigants following their jury service."

---

[6] We note that, while the defendant requested such a hearing on the morning of the sentencing enhancement trial, he did not advance it by motion for new trial, with supporting affidavits, at that time or after the denial of his request. A motion for new trial is the recognized route for raising postverdict claims because it permits a clarified record to serve as a basis for the judge's decision and for appellate review. See, e.g., Commonwealth v. Fidler, 377 Mass. 192, 194 n.2 (1979); Commonwealth v. Werner, 81 Mass. App. Ct. 689, 693 (2012). In the interest of judicial economy, we conclude that, based on the record before us, this is one of those rare cases where we are able to resolve a postverdict claim without further proceedings below. Cf. Commonwealth v. Zinser, 446 Mass. 807, 811-812 (2006).

Commonwealth v. Bresnahan, supra at 769. "Cases in which postverdict inquiry was proper have been narrowly limited." Commonwealth v. Semedo, 456 Mass. 1, 22-23 (2010). Generally, a postverdict inquiry of a juror may only be conducted if the court finds that extraneous matters became part of the jury's deliberations, Commonwealth v. Fidler, 377 Mass. 192, 193 (1979), or where a reasonable basis of racial or ethnic prejudice, see Commonwealth v. Laguer, 410 Mass. 89, 97 (1991), or some other personal bias is raised, see Commonwealth v. Guisti, 434 Mass. at 253. "Where a case is close, . . . a judge should exercise discretion in favor of conducting a judicial inquiry." Ibid., quoting from Commonwealth v. Dixon, 395 Mass. 149, 153 (1985). The defendant here contends that an evidentiary hearing was necessary to ensure that he received a fair trial free of extraneous influence and bias.

1. Extraneous influence. When there is a claim of extraneous influence on a jury, the defendant "bears the burden of demonstrating [by a preponderance of the evidence] that the jury were in fact exposed to the extraneous matter." Commonwealth v. Fidler, supra at 201. See Commonwealth v. Kincaid, 444 Mass. 381, 386 (2005).[7] "A trial judge has broad

---

[7] If the defendant meets the burden of showing that the extraneous matter came to the jury's attention, "the burden then shifts to the Commonwealth to show beyond a reasonable doubt

discretion in determining whether a postverdict inquiry of a juror is warranted and is under no duty to conduct such an inquiry unless the defendant makes a 'colorable showing' that extraneous matters may have affected a juror's impartiality." Commonwealth v. Guisti, supra at 251, quoting from Commonwealth v. Dixon, supra at 152.  "[T]here must be something more than mere speculation," and, here, the defendant has not provided any more.  Commonwealth v. Dixon, supra, quoting from United States v. Barshov, 733 F.2d 842, 851 (11th Cir. 1984), cert denied, 469 U.S. 1158 (1985).  See also Commonwealth v. Philyaw, 55 Mass. App. Ct. 730, 737 (2002).

Typically, extraneous influences are "specific facts not mentioned at trial concerning one of the parties or the matter in litigation . . . brought to the attention of the deliberating jury," Fidler, supra 200, such as pretrial publicity about the case, Commonwealth v. Cameron, 385 Mass. 660, 668 (1982), or extraneous information about the defendant, Commonwealth v. Kamara, 422 Mass. 614, 616-617 (1996), or the crime scene.  See Commonwealth v. Cuffie, 414 Mass. 632, 636-638 (1993); Commonwealth v. Philyaw, supra at 737.  The animating principle is that "[l]itigants are entitled to a decision on the evidence at trial, governed by the rules of evidence," and, "[w]hile the

---

that [the defendant] was not prejudiced by the extraneous matter."  Commonwealth v. Fidler, supra at 201.

jury may leaven its deliberations with its wisdom and experience, in doing so it must not bring extra facts into the jury room."  Ibid. (citation omitted).

In determining whether the juror's purported familiarity with Welch's Automotive constituted an extraneous influence, we find instructive the cases pertaining to unauthorized juror visits to crime scenes.  While "[a] juror's unauthorized visit to a location relevant to a case is not per se prejudicial," "[c]ompetent evidence that [a juror] . . . had access to potentially prejudicial information unfiltered by the trial process may suffice to invalidate a verdict."  Commonwealth v. Cuffie, supra at 636-637.  Where a defendant claimed mistaken identity, a juror's visit to a crime scene in order to determine how well a police officer could see a defendant provided her with "extraneous information by which to evaluate the testimony of the officer on this point."  Id. at 637 n.6.  The court held that it was therefore error for the judge not to conduct a voir dire to determine whether the visit had occurred and what the juror might have communicated to her fellow jurors.  Id. at 636-637.  See Commonwealth v. Philyaw, supra at 739-740 (where police officers identified the defendant as climbing over fences and where his main defense was misidentification, buttressed by his alleged inability to navigate such fences after an automobile accident, it was error for the judge not to conduct a

voir dire where an affidavit alleged that, prior to verdict, a juror had visited the scene to assess the fences with respect to the defendant's ability to scale them).

Unlike Cuffie and Philyaw, this case does not present any possible extraneous influence that "may suffice to invalidate a verdict." Cuffie, supra at 637. The defendant has not alleged that "specific facts not mentioned at trial concerning . . . the matter in litigation were brought to attention of the deliberating jury . . . ." Commonwealth v. Philyaw, supra at 739, quoting from Commonwealth v. Fidler, supra at 200. Any knowledge of Welch's that the juror might have obtained as a customer would have been essentially coincident with the evidence of the site presented at trial. There were no facts, unfiltered by the trial process, which could have influenced the juror or been communicated to other jurors. Thus, no further inquiry was necessary to determine whether the verdict had been tainted by an extraneous matter.

2. Juror bias. The defendant asserts that an evidentiary hearing was required to assess the juror's bias because the juror had been a customer of the witness's business, Welch's Automotive, which had been the location of an alleged breaking and entering. "Although juror bias is not an extraneous matter, a postverdict inquiry may be appropriate where there is evidence of bias in order to ensure that the defendant received a fair

trial."  Commonwealth v. Guisti, 434 Mass at 253, and cases cited.  When a defendant raises a "'reasonable claim' of juror bias" after the verdict, due process requires a hearing. Commonwealth v. Guisti, supra at 254, quoting from Commonwealth v. Amirault, 399 Mass. 617, 625 (1987).  We review this determination for abuse of discretion.  See Commonwealth v. Amirault, supra at 627.  A showing of actual or implied bias constitutes structural error, and the defendant need not show that the verdicts were affected by the impartiality.  See Commonwealth v. Hampton, 457 Mass. 152, 163 (2010).

The essence of the defendant's claim is not so much that the juror was biased against him, but that he, as a customer, was biased in favor of the witness whose business was allegedly the target of criminal activity.[8]  Under these circumstances, we do not consider that relationship to be the kind that would intrude upon a juror's ability to assess uncontroverted evidence.  See Commonwealth v. Subilosky, 352 Mass. 153, 161 (1967) (the fact that a prospective juror had an account in or did business with a bank that had been robbed would not be basis for disqualification in trial for robbery of the bank).  The juror's hypothesized partiality to Shapiro as the proprietor of

---

[8] In assessing the relationship between juror and witness, while the court could no doubt properly consider that Shapiro stated that he did not recognize the juror, that fact would not be dispositive of the juror's possible familiarity with Shapiro.

Welch's -- supposedly biasing him against the defendant -- does not rise above the level of "mere speculation," as it must to require further postverdict inquiry.[9] Commonwealth v. Dixon, 395 Mass. at 152, quoting from United States v. Barshov, 733 F.2d. at 851. The judge did not abuse her discretion in concluding that an evidentiary hearing was not warranted.

The defendant also argues that the juror's conversation with Shapiro postverdict suggests that he may have not answered one of the voir dire questions truthfully. At voir dire, the list of the witnesses' names was read, along with the hometown of each, but no other information was shared. Before the list was read, the judge explained, "I want to make sure that you're not related to them and that you don't know any of these people." After the list was read, the judge asked the jurors whether they knew or were related to any of the potential witness, and none of the jurors answered in the affirmative. Prior to the reading of the witness list, the judge had informed the jury of the nature of the allegations in the case, including that it involved gas stations in the towns of Littleton, Concord, Boxborough, and Westford. But the identities of the individual gas stations -- including Welch's Automotive -- were not

---

[9] This case does not raise suspicions regarding the juror's ability to impartially evaluate the credibility of Shapiro as a witness because Shapiro testified only to undisputed facts to which the investigating officer also testified.

revealed until after the voir dire.  The defendant argues that the fact that the juror approached Shapiro at the gas station suggests that the juror would have recognized Shapiro's name and, thus, that his negative response to this question at voir dire was false, calling into question the integrity of the verdict.  Quite apart from the fact that several benign alternatives are equally plausible,[10] we do not think that an evidentiary hearing was required here.

"An impartial jury are the cornerstone of a fair trial; '[t]he failure to grant a defendant a fair hearing before an impartial jury violates even minimal standards of due process.'" Commonwealth v. Amirault, 399 Mass. 617, 624 (1987), quoting from Commonwealth v. Susi, 394 Mass. 784, 786 (1985).  "Voir dire examination serves to protect th[is] right by exposing possible biases, both known and unknown, on the part of potential jurors. . . .  The necessity of truthful answers . . . is obvious."  McDonough Power Equip., Inc. v. Greenwood, 464 U.S. 548, 554 (1984) (McDonough).  That said, "defendants must also recognize that they are not entitled to perfection in the trial process." Commonwealth v. Amirault, supra.

---

[10] The juror may not have recognized Shapiro at all at trial but recognized him at the gas station based in Shapiro's role as a witness at trial.  Or the juror may have recognized Shapiro based on his appearance as soon as he took the stand.

"[T]o obtain a new trial . . . , a party must first demonstrate that a juror failed to answer honestly a material question on voir dire, and then further show that a correct response would have provided a valid basis for a challenge for cause." Commonwealth v. Amirault, supra at 625. See Commonwealth v. Emerson, 430 Mass. 378, 384 (1999), cert. denied, 529 U.S. 1030 (2000). If the judge finds that the juror answered voir dire questions mistakenly, but honestly, the analysis as to actual bias ends, and the judge must find the juror impartial. See McDonough, supra at 556 ("[T]he motive for concealing information may vary, but only those reasons that affect a juror's impartiality can truly be said to affect the fairness of a trial").

In this case, where during the voir dire, the witnesses were only identified by name and hometown; the witnesses were not presented to the jury during jury selection; there was no link during voir dire between the witnesses and the gas stations that had been targeted; and no colorable reason has been presented as to why a juror would deliberately give a false answer; we cannot say that the judge abused her discretion in failing to hold an evidentiary hearing on juror bias. See Commonwealth v. Emerson, supra (juror bias is a question of fact

reviewed for abuse of discretion).[11]  Nor could we conclude that, even if the juror were honest though mistaken in his answer, this is one of those exceptional situations where, because of the relationship between the juror and the witness, bias can be implied as a matter of law.  See Commonwealth v. Amirault, 399 Mass. at 628.  The defendant has not made the requisite showing of juror bias to warrant a postverdict inquiry.[12]  See id. at 625 (postverdict hearing required if defendant raises a "reasonable claim" of juror bias).  See also Commonwealth v. Guisti, 434 Mass. at 253-254.[13]

3.  Sufficiency of the evidence.  The defendant argues that the evidence was insufficient to support a conviction for breaking and entering at Welch's Automotive.  We consider the evidence in the "light most favorable to the Commonwealth" to determine whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting

---

[11] Even if the juror had not answered honestly, a correct answer would not have provided a valid basis for a challenge for cause. See Commonwealth v. Subilosky, 352 Mass. at 161.

[12] Because we determine that there was no need for a postverdict inquiry with respect to the Welch's conviction, we need not consider the defendant's argument that bias taints the other convictions as well.

[13] Another judge could reasonably elect to conduct a voir dire.  However, the rejection of that alternative in these circumstances did not constitute an abuse of discretion.

from Jackson v. Virginia, 443 U.S. 307, 318-319 (1979). A conviction may be entirely or partially supported by circumstantial evidence and the permissible inferences drawn therefrom. See Commonwealth v. Fitzpatrick, 463 Mass. 581, 590 (2012). "To be permissible, an inference need only be 'reasonable and possible', not 'necessary or inescapable.'" Id. at 590-591, quoting from Commonwealth v. Casale, 381 Mass. 167, 173 (1980).

Viewed in the light most favorable to the Commonwealth, the evidence was sufficient to establish the defendant as the perpetrator. The central question at trial with regard to the break-in at Welch's was one of identification. The evidence included a photograph of the panel that had been dislodged from the garage door at Welch's featuring shoeprints. The patterns of the shoeprints matched the soles of the sneakers that were recovered from the defendant. Additional circumstantial evidence also linked the Welch's break-in to the incidents at the other nearby gas stations, which occurred in a similar manner. In particular, videotape surveillance evidence from other incidents was admitted alongside evidence that a witness has previously identified the defendant as the individual in those videotape recordings. The jury also could have inferred that, after finding no cash at Welch's, the defendant then traveled to a nearby Concord gas station to break into it.

Taken together, there was sufficient evidence to sustain the conviction of the defendant of breaking and entering at Welch's Automotive.

<u>Judgments affirmed</u>.